Bob **BULLOCK**, Comptroller of Public Accounts, Appellant,

v.

**LONE STAR INDUSTRIES, INC.**, Appellee.

No. 6068.

Court of Civil Appeals of Texas, Waco.

July 5, 1979.

Rehearing Denied Aug. 2, 1979.

Mark White, Atty. Gen., John W. Fainter, Jr., First Asst. Atty. Gen., Ted L. Hartley, Executive Asst. Atty. Gen., Martha E. Smiley, R. L. Lattimore, Asst. Attys. Gen., Austin, for appellant.

Dennis Reese, Small, Craig & Werkenthin, Austin, for appellee.

Emily A. Parker, Thompson & Knight, Austin, for amicus curiae.

## OPINION

McDONALD, Chief Justice.

This is an appeal by the Comptroller of the State of Texas from judgment decreeing Lone Star Industries recover $103,995.56 in sales taxes paid under protest.

Plaintiff Lone Star sued defendant Bullock, Comptroller, to recover $32,943.76 sales taxes paid under protest on plaintiff's purchase of carbon steel grinding balls, and $71,051.80 paid on purchase of a floating clamshell dredge. Plaintiff contended the dredge was a vessel and not taxable under Article 20.04 of the Limited Sales, Excise and Use Tax Act; and that the steel grinding balls were not taxable under such Act because, as used they were ingredients or component parts of the cement and were used or consumed as a necessary or essential performance in its manufacture. All facts were stipulated by the parties.

The trial court rendered judgment for plaintiff for all the relief sought.

Defendant Comptroller appeals.

Defendant's 1st contention asserts the trial court erred in holding the dredge is a "vessel" as that term is used in Article 20.04(P)(1) and defined by the Comptroller since October 1, 1969 and therefore exempted by said Article from taxation.

Article 20.04(P)(1) VATS exempts from the sales, excise and use taxes "receipts from the sale of * * * vessels * * * or barges of 50 tons displacement and over built in this State, and the receipts from the sale of such ships, vessels or barges when sold by the builder thereof * * * ".

The Comptroller in its amended ruling No. 95–0.14 effective October 1, 1969 defined vessels:

"*Vessels.* The term 'vessel' includes every description of watercraft or other artificial contrivance used, or capable of being used as a means of transportation on water".[1]

The stipulations reflect that $71,051.80 of the taxes paid under protest and here in controversy were on the purchase by plaintiff of the floating clamshell dredge; that same has over 50 tons displacement; that it was built in Texas; that it dredges gravel and sand from a waterfilled cut 400 to 600 feet wide located near the Colorado River in Colorado County, Texas; that it is mounted on 38 floating pontoons; that it has a triple crane affixed to a floating platform designed for lifting sand and gravel; it mines sand and gravel at an average depth approximately 80 feet below the surface of the water; the dredge has always been located in water; the dredge contains and carries on its platform all the equipment necessary for dredging the sand and gravel from the bottom of the cut; plus a crew of 4 with area provided for storage and sleeping quarters if necessary; it traverses the width of the cut and lengthens same some 75 feet weekly; the movement of the dredge is controlled by the operator and can move in any direction; but it could be moved by external means of propulsion such as a tug; it has made cuts of up to 5000 feet long; it could be used for dredging in the Colorado River or operated offshore in some areas of the Gulf of Mexico; during operations it is used as a means of

---

1. Prior to October 1, 1969 the Comptroller had a more restrictive definition of the term "vessel", and excepted from its coverage dredges.

transportation for its crew, the equipment, and various supplies and dredging equipment.

The Comptroller's definition of a vessel is identical to the definition of a vessel in 1 U.S.C.A. Section 3. Federal courts interpreting such definition hold dredges with the physical characteristics of plaintiff's dredge are "vessels" within the meaning of the statutory definition. *Ellis v. United States*, 206 U.S. 246, 27 S.Ct. 600, 51 L.Ed. 1047; *Senko v. La Crosse Dredging Corp.*, 352 U.S. 370, 77 S.Ct. 415, 1 L.Ed.2d 404; *Early v. American Dredging Co.*, D.C., 101 F.Supp. 393; *Wilkes v. Mississippi River Sand & Gravel Co.*, 6 Cir., 202 F.2d 383; *Gahagan Const. Corp. v. Armao*, 1 Cir., 165 F.2d 301; *McKie v. Diamond Marine Co.*, 5 Cir., 204 F.2d 132; *Norton v. Warner Co.*, 321 U.S. 565, 64 S.Ct. 747, 88 L.Ed. 931; *Jeffrey v. Henderson Bros.*, 4 Cir., 193 F.2d 589; *Summerlin v. Massman Const. Co.*, 4 Cir., 199 F.2d 715.

Plaintiff's dredge meets all of the requirements necessary to be a "vessel" under both the Comptroller's definition and the federal cases interpreting and applying that definition.

Contention 1 is overruled.

Contention 2 asserts the trial court erred in holding the steel grinding balls exempt from taxation because parts thereof entered into and became an ingredient or component part of the manufactured cement and that such use or consumption thereof was necessary or essential to the manufacturing process.

Article 20.04(E)(1) VATS provides exemptions for (a) tangible personal property which will enter into and become an ingredient or component part of tangible personal property manufactured for retail sale.

The stipulations reflect plaintiff manufactures Portland cement at plants in Texas for ultimate sale at retail; in the process of manufacturing the cement the raw material enters grinding mills where thousands of carbon steel grinding balls ranging in size from 1 to 5 inches in diameter mix with the raw materials and grind it to a fine consistency; later grinding balls are again added which reduce the raw materials to powder finer than flour; the grinding action causes the balls to wear down and the worn portion becomes a component part of the finished product; the grinding balls contribute to both the chemistry and color of the cement; 98% of the material in each grinding ball ends up in the finished cement; iron is a constituent of Portland cement; the grinding balls contribute 3.5% of the total iron content of the finished product; the grinding balls are carried on plaintiff's books as a cost of goods sold and not as a capital asset. $32,943.76 of the taxes paid under protest were on the carbon steel grinding balls.

The Alabama Supreme Court in *State v. U. S. Steel Corp.*, 281 Ala. 553, 206 So.2d 358 interpreting Alabama's "ingredient or component part" sales tax exemption which is identical in substance to the Texas statute, upheld the exemption.

We think the steel balls were tangible personal property which entered into and became an ingredient and component part of the cement manufactured by plaintiff and that same was exempted under the statute from the sales tax.

Contention 2 is overruled.

The judgment is affirmed.