ACCEPTED
15-24-00111-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
1/27/2025 6:29 PM
CHRISTOPHER A. PRINE
CLERK

**No. 15-24-00111-CV**

In the Fifteenth Court of Appeals
Austin, Texas

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
1/27/2025 6:29:16 PM
CHRISTOPHER A. PRINE
Clerk

**Glenn Hegar, Comptroller of Public Accounts of the State of Texas, and Ken Paxton, Attorney General of the State of Texas**
*Appellants,*

V.

**Championx, LLC,**
*Appellee.*

On Appeal from the 419th Judicial District Court, Travis County, Texas
Cause Number D-1-GN-20-000139

## Appellants' Brief

KEN PAXTON
Attorney General

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney
 General

JAMES LLOYD
Deputy Attorney General for Civil
 Litigation

STEVEN ROBINSON
Division Chief, Tax Litigation
 Division

KELSEY HANSON
Assistant Attorney General
State Bar No. 24096654
Kelsey.Hanson@oag.texas.gov

Office of the Attorney General
Tax Litigation Division
P.O. Box 12548 (MC 029)
Austin, Texas 78711-2548
Tel: 512-463-8897
Fax: 512-478-4013

*Counsel for Appellants*

**ORAL ARGUMENT REQUESTED**

## IDENTITY OF PARTIES AND COUNSEL

**Appellants:**              Glenn Hegar, Comptroller of Public Accounts
of the State of Texas, and Ken Paxton,
Attorney General of the State of Texas

**Appellate and**           Kelsey Hanson
**Trial Counsel:**           Texas Office of the Attorney General
Tax Litigation Division
P.O. Box 12548 (MC 029)
Austin, Texas 78711-2548
Tel: (512)463-8897
Fax: (512) 478-4013
Kelsey.Hanson@oag.texas.gov

**Appellee and**            Deborah S. Sloan
**Trial Counsel:**          Jones Day
2727 N. Harwood Street, Suite 500
Dallas, Texas 75201-1515

John M. Allen
Antoinette L. Ellison
Jones Day
1221 Peachtree Street NE
Atlanta, Georgia 30361

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ............................................... ii

TABLE OF CONTENTS ......................................................... iii

INDEX OF AUTHORITIES ...................................................... v

RECORD REFERENCES ......................................................... vi

STATEMENT OF THE CASE ................................................... vii

STATEMENT REGARDING ORAL ARGUMENT ............................ viii

ISSUES PRESENTED .............................................................. ix

STATEMENT OF FACTS ......................................................... 1

   I.   Factual Background ...................................................... 1

     A. ChampionX, LLC's Chemical Business ........................ 1

     B. Champion's Claim for a Refund of Sales and Use Tax Related to the Purchase of the Containers and Services Performed on the Containers. ...................................................... 4

   II.  Statutory Background .................................................... 5

   III. Procedural History ...................................................... 7

     A. Champion's Tax Refund Suit ....................................... 7

     B. The Trial Court's Judgment ........................................ 8

SUMMARY OF THE ARGUMENTS .................................................. 10

STANDARD OF REVIEW ............................................................ 10

ARGUMENTS AND AUTHORITIES: .............................................. 13

   I.   The trial court erred in holding that the specific Container Exemption under Texas Tax Code Section 151.322 did not bar Champion's claim that the more general Manufacturing Exemption applied to its Containers. ............................................... 13

   II.  The trial court erred in holding that the exemption for property used in manufacturing under Texas Tax Code Section 151.318 exempts Champion's Containers from Texas sales and use tax. ........ 17

iii

A.. Champion's Containers are neither ingredients nor component parts of tangible personal property manufactured for ultimate sale....................................................................................17

B......Champion's Containers do not qualify for the Manufacturing Exemption because they are excluded pursuant to Texas Tax Code Section 151.318(c). ...........................................20

III. The trial court erred in holding that the exemption for services on exempted property under Texas Tax Code Section 151.3111 applies to the cleaning, delivery, and pickup services performed on Champion's Containers. ............................................................22

PRAYER ..............................................................................25

CERTIFICATE OF COMPLIANCE......................................26

CERTIFICATE OF SERVICE..............................................27

INDEX OF APPENDICES ...................................................28

# INDEX OF AUTHORITIES

**Cases**                                                        **Pages**

*Bullock v. Lone Star Indus., Inc.,*
584 S.W.2d 386 (Tex.. App.—Waco 1979, writ ref'd n.r.e.)..................19

*Bullock v. Nat'l Bancshares Corp.,*
584 S.W.2d 268 (Tex. 1979) ........................................................ 12, 18

*Carreras v. Marroquin,*
339 S.W.3d 68 (Tex. 2011) ................................................................12

*Combs v. Roark Amusement & Vending, L.P.,*
422 S.W.3d 632 (Tex. 2013) ..............................................................13

*East Tex. Oxygen Co. v. State,*
681 S.W.2d 741 (Tex. App. Austin—1984, no writ) ...........................16

*Holmes v. Morales,*
924 S.W.2d 920 (Tex. 1996) ..............................................................13

*Horizon/CMS Healthcare Corp. v. Auld,*
34 S.W.3d 887 (Tex. 2000) ................................................................13

*In re Texas Educ. Agency,*
619 S.W.3d 679 (Tex. 2021) ........................................................23, 24

*TGS-NOPEC Geophysical Co. v. Combs,*
340 S.W.3d 432 (Tex. 2011) ..............................................................14

**Statutes**

Tex. Tax Code §112.155 .........................................................................9
Tex. Tax Code §151.005 .........................................................................5
Tex. Tax Code §151.051 .........................................................................5
Tex. Tax Code §151.101 .........................................................................5
Tex. Tax Code §151.318 ............................................................... *passim*
Tex. Tax Code §151.322 ............................................................... *passim*
Tex. Tax Code §151.3111............................................................... *passim*

# RECORD REFERENCES

"CR1" refers to the clerk's record for Trial Court Cause No. D-1-GN-20-000139 dated November 22, 2024. "CR2" refers to the clerk's record for Trial Court Cause No. D-1-GN-21-000699 dated November 22, 2024. "CR3" refers to the clerk's record for Trial Court Cause No. D-1-GN-22-003715 dated November 22, 2024.

## STATEMENT OF THE CASE

**Nature of the case:** Appellee seeks to recover a refund of sales and use tax on its purchase of portafeed drums, tanks, and totes (the "Containers") used in its chemical business as well as for the services performed on the Containers. Appellee claims an exemption on its purchase of the Containers under Texas Tax Code Section 151.318 ("the Manufacturing Exemption"). Appellee claims an exemption on the cleaning, delivery, and pickup services performed on the Containers under Texas Tax Code Section 151.3111 ("the Services Exemption").

**Trial court and judge:** 419th Judicial District
Hon. Madeleine Connor

**Trial court proceedings and disposition:** The Hon. Madeline Connor denied Appellants' Traditional and No Evidence Motion for Summary Judgment, granted Appellee's Motion for Partial Summary Judgment, and granted Appellants' Partial Plea to the Jurisdiction.

# STATEMENT REGARDING ORAL ARGUMENT

The trial court's decision raises important questions regarding the proper construction of Texas Tax Code Section 151.322 ("the Container Exemption"). Additionally, the trial court's decision raises important questions regarding the proper construction of Texas Tax Code Section 151.318 ("the Manufacturing Exemption"). Oral argument would provide the opportunity to fully explore the meaning of these two provisions.

## ISSUES PRESENTED

**ISSUE ONE:**      Did the trial court err in holding that the Container Exemption under Texas Tax Code Section 151.322, a statute specific to containers, did not bar Appellee from claiming a sales and use tax refund for its purchase of portafeed drums, tanks, and totes (the "Containers") at issue under the more general Manufacturing Exemption?

**ISSUE TWO:**      If the Container Exemption does not bar Appellee from claiming the Manufacturing Exemption for its purchase of the Containers, do Appellee's purchases qualify for a sales and use tax exemption under Texas Tax Code Section 151.318?

**ISSUE THREE:**      Are Appellee's purchases of cleaning, delivery, and pickup services performed on Appellee's Containers exempted from sales and use tax under Texas Tax Code Section 151.3111?

I. **Factual Background**

**A. ChampionX, LLC's Chemical Business**

ChampionX, LLC ("Champion"), formerly known as Nalco Company, LLC, is a company which produces and sells chemicals for customers in a wide range of industries including the energy and water industries. CR1 158, 194. Specifically, between March 2011 and October 2018 (the "Periods at Issue"), Champion manufactured chemicals for use in water treatment applications and for customers in the oil and gas industries who were involved in oil exploration, production, refining, and in chemical processing. *Id.*

Champion's chemical manufacturing process consists of filling reactors with raw materials, blending the materials in the reactors, and adding a catalyst to initiate a chemical reaction. CR1 161, 205-206. Champion then tests the product to ensure it meets customer order specifications and industry specifications. CR1 141, 206. The chemicals are then cooled so they are ready for transfer into porta-feed containers (the "Containers"). *Id.*

Champion's Containers are made of different materials including stainless steel, polyethylene, or plastic bottles inside stainless steel shells. CR1 198. The Containers range in size from 15 gallons to 750 gallons. CR1 198. The type of Container Champion chooses to package a customer's batch of chemicals in depends on the type of chemical to be packaged. CR1 159, 198.

A hose is used to enable the transfer of chemicals from the reactor to one of Champion's Containers. CR1 161-162, 206. After the chemicals have been removed from the reactor and placed into the Containers, samples of the chemicals are removed from the Containers and are tested for quality control purposes. CR1 206. This quality control process includes testing a sample of the chemicals which have been placed in the first and last Containers from a batch. *Id.* This testing ensures no contamination entered the batch of chemicals during the process of transferring the chemicals from the reactor into the Containers. *Id.*

If the testing confirms that the chemicals have maintained the applicable specifications during the transfer process from the reactor to the Containers, the Containers are then tagged and sealed. CR1 207. The sealed Containers are then transferred to a warehouse where they are

2

stored until the Containers are ready to be transported to customers. CR1 141, 207.

Champion delivers its chemicals to its end-user customers in the Containers. CR1 141, 207. The cost of the Containers is included in the price charged by Champion to its customers. CR1 207. However, Champion's customers only temporarily take possession of the Containers in order to obtain the chemicals Champion manufactures for sale. CR1 141-142, 159, 208-209.

Once a customer empties the chemicals from the Containers, they contact a third-party representative of Champion to pick up the empty Containers. CR1 141-142, 210. Champion then arranges for a third-party vendor to pick up the Containers and transport them to a third-party service provider to recondition and clean the returned Containers. *Id*. After the Containers are cleaned at a reconditioning facility, they are sent back to one of Champion's plants. *Id*. The cleaned and reconditioned Containers are then inserted back into Champion's chemical production process to be reused for sending new batches of chemicals to additional end-user customers. *Id*.

**B. Champion's Claim for a Refund of Sales and Use Tax Related to the Purchase of the Containers and Services Performed on the Containers.**

Champion seeks to recover a refund of sales and use tax for the tax periods of March 1, 2011, to February 28, 2014, January 1, 2013, to December 31, 2015, January 2015 to September 30, 2017, and December 1, 2016, to October 31, 2018. CR1 139. During the Periods at issue, Champion placed the chemicals it manufactured and sold into returnable porta-feed Containers. CR1 139. Champion is seeking a sales and use tax refund of taxes related to its purchases and leases of the Containers as well as for purchases of services related to the Containers. *Id.*

First, Champion seeks a refund of sales and use tax paid on their purchases and leases of the Containers. *Id.* The Containers used by Champion were manufactured by third parties. CR1 119. In addition to purchasing Containers, Champion also leased Containers during the Periods at Issue. CR1 199.

Next, Champion seeks a refund of sales and use tax paid on their purchase of cleaning services. *Id.* During the Periods at Issue, Champion paid sales tax and accrued use tax on their purchases of cleaning services related to the Containers to the vendors for those services. *Id.*

4

Finally, Champion seeks a refund of sales and use tax paid on their purchases of delivery and pickup services related to the Containers. *Id.* During the Periods at Issue, Champion paid sales tax and use tax on services for the delivery of the Containers to Customers and the pickup of the Containers from the Customers. *Id.*

## II.    Statutory Background

Texas imposes sales and use tax on each sale or use of a "taxable item" in the State. *See* Tex. Tax Code §§ 151.005, 151.051, 151.101. "Taxable items" include "tangible personal property." *Id.* § 151.010. "Tangible personal property" is defined as "personal property that can be seen, weighed, measured, felt, or touched or that is perceptible to the senses in any other manner," *Id.* § 151.009.

Subchapter H of Chapter 151 of the Texas Tax Code provides exemptions from sales and use taxes. *Id.* §§ 151.301–.3595. Generally, an exemption specifies a type of taxable item and, if the statutory qualifications are met, the sale, lease, or use of that item is not subject to tax. *Id.* § 151.301.

There are two exemptions at issue in this appeal. The first relevant exemption is informally called the "the Container Exemption." *Id.*

5

§151.322. The second relevant exemption is informally called "the Manufacturing Exemption." *See* Tex. Tax Code § 151.318. This appeal concerns which of these exemptions apply to Champion's property, if any.

The Container Exemption provides three instances in which a container is exempt from sales and use tax:

> (1)    a container sold with its contents if the sales price of the contents is not taxed under this chapter;
>
> (2)    a nonreturnable container sold without its contents to a person who fills the container and sells the contents and the container together; and
>
> (3)    a returnable container sold with its contents or resold for refilling.

Tex. Tax Code §151.322(a).

For purposes of the Container Exemption, a "returnable container" is a container returned for reuse by the buyer of the contents. Tex. Tax Code §151.322(b)(1). A "nonreturnable container means a container other than a returnable container". Tex. Tax Code §151.322(b)(1).

The Manufacturing Exemption provides in relevant part:

> (a)    The following items are exempted from taxes imposed by this chapter if sold, leased, or rented to, or stored, used, or consumed by a manufacturer.

6

(1) tangible personal property that will become an ingredient or component part of tangible personal property manufactured, processed, or fabricated for ultimate sale;

(2) tangible personal property directly used or consumed during the actual manufacturing, processing, or fabrication of tangible personal property for ultimately sale if the use or consumption of the property is necessary or essential to the manufacturing processing, or fabrication operation and directly makes or causes a chemical or physical change to:

(A) the product being manufactured, processed, or fabricated for ultimate sale; or

(B) any intermediate or preliminary product that will become an ingredient or component part of the product being manufactured, processed, or fabricated for ultimate sale.

Tex. Tax Code § 151.318.(a).

## III. Procedural History

### A. Champion's Tax Refund Suit

In 2020, 2021, and 2022, Champion filed three lawsuits against the Comptroller and the Attorney General to recover the sales and use tax it paid related to the Containers as well as the pickup, delivery, and cleaning services performed on the Containers for the tax periods of March 1, 2011, to February 28, 2014, January 1, 2013, to December 31,

7

2015, January 2015 to September 30, 2017, and December 1, 2016, to October 31, 2018. All three of these lawsuits were consolidated under the caption *ChampionX, LLC, v. Glenn Hegar, Comptroller of Public Accounts of the State of Texas, and Ken Paxton, Attorney General of the State of Texas*, Cause No. D-1-GN-20-000139 in the 419th Judicial District Court in Travis County, Texas.[1]

### B. The Trial Court's Judgment

On December 19, 2023, the Court heard the parties' cross-motions for summary judgment. On March 20, 2024, the Court denied Defendants' Traditional and No Evidence Motions for Summary Judgment, granted Plaintiff's Motion for Partial Summary Judgment, and granted Defendants' Partial Plea to the Jurisdiction.

On September 9, 2024, the Court entered a Final Judgment in this matter holding that Champion's Containers are exempt from Texas sales and use tax under the Manufacturing Exemption found in section 151.318. CR1 916-918. Additionally, the Court held the exemption for

---

[1] Champion's first lawsuit was filed on January 8, 2020, under Cause No. D-1-GN-20-000139. CR1 4-29. Champion's second lawsuit was filed on February 11, 2021, under Cause No. D-1-GN-21-000699. CR2 3-31. An Order consolidating the second lawsuit into the first lawsuit was entered on July 21, 2021. CR2 36-39. Champion's third lawsuit was filed on August 15, 2022, under Cause No. D-1-GN-22-003715. CR3 3-27. An Order consolidating the third lawsuit into the first lawsuit was entered on October 4, 2022. CR3 41-43.

8

services on exempted property under Texas Tax Code Section 151.3111 applies to the cleaning, delivery, and pickup services performed on Appellee's Containers. *Id.*

The Court awarded Champion to three refunds as follows:

- For the period of January 1, 2013, through December 31, 2015, the Court awarded $1,032,948.67 of sales and use tax, plus statutory interest pursuant to Tex. Tax Code § 112.155.

- For the period of January 1, 2015, through September 30, 2017, the Court awarded $1,424,794.60 of sales and use tax, plus statutory interest pursuant to Tex. Tax Code § 112.155.

- For the period of December 1, 2016, through October 31, 2018, the Court awarded $708,602.92 of sales and use tax, plus statutory interest pursuant to Tex. Tax Code § 112.155.

*Id.*

## SUMMARY OF THE ARGUMENTS

The trial court erred in concluding that Champion was entitled to a sales and use tax exemption for its purchase of Containers and to the purchase of services related to those Containers. Champion bought the Containers, which Champion used to transport chemicals to its customers. The Containers were then collected, cleaned, and transported to Champion for reuse. Champion seeks a refund for its purchase of the Containers and for its purchase of cleaning and transportation services related to the Containers.

First, the trial court erred by finding that Champion was entitled to a sales and use tax refund on the purchases of the Containers. The Texas Legislature has set out a specific provision under which a manufacturer is exempt from paying sales tax on containers, known as "the Container Exemption." Tex. Tax Code § 151.322. Champion's Containers do not qualify for an exemption under the plain language of the Container Exemption. *Id.* A statutory construction principle requires a specific statute to control over a more general one. Since Champion's Containers do not qualify under the specific Container Exemption, they also cannot qualify under more general exemptions. The trial court erred

10

by not excluding Champion's refund claim under the Container Exemption.

Next, the trial court erred by finding that Champion was entitled a sales and use tax refund on the purchase of the Containers by applying the Manufacturing Exemption. The Texas Legislature created an exemption for manufacturers from paying sales and use tax on certain qualified purchases known as "the Manufacturer Exemption." Tex. Tax. Code § 151.318. The Manufacturer Exemption applies in relevant part to items that are ingredients or components of the item being manufactured. Tex. Tax Code § 151.318(a)(1). Champion's Containers are neither. Additionally, the Manufacturing Exemption does not apply to items used for intraplant transportation, such as Champion's Containers. Tex. Tax Code § 151.318(c).

Finally, to the trial court erred by finding that Champion was entitled to a sales and use tax refund on the cleaning and transportation services related to the Containers. Tex. Tax Code § 151.3111. The Texas Legislature created an exemption for services performed on exempt personal property. The Containers are not exempt personal property.

Appellant requests that this Court reverse the trial court's judgment and render a take nothing judgment against Champion.

## STANDARD OF REVIEW

This is an appeal of cross-motions for summary judgment involving the construction of a multiple exemptions from taxation in the Texas Tax Code. Appellate Courts review summary judgment and issues of statutory construction de novo. *Carreras v. Marroquin*, 339 S.W.3d 68, 71 (Tex. 2011). Exemptions from taxation are strictly construed against the party seeking the exemption. *Bullock v. Nat'l Bancshares Corp.*, 584 S.W.2d 268, 271-272 (Tex. 1979). This is because exemptions are inherently unequal and place a greater burden on other taxpayers. *Id.* at 272. Thus, any doubts as to whether a transaction is exempt is resolved in favor of the taxing authority and against the taxpayer. *Id.* Simply put, "the burden of proof is on the claimant to clearly show that it comes within the statutory exemption." *Id.*

## ARGUMENTS AND AUTHORITIES:

I. **The trial court erred in holding that the specific Container Exemption under Texas Tax Code Section 151.322 did not bar Champion's claim that the more general Manufacturing Exemption applied to its Containers.**

The trial court erred in applying the Manufacturing Exemption to Champion's refund claims because a more specific provision of Chapter 155 of the Tax Code governs tax exemptions for containers. "[T]he traditional statutory construction principle [is] that the more specific statute controls over the more general." *Horizon/CMS Healthcare Corp. v. Auld,* 34 S.W.3d 887, 901 (Tex. 2000). Generally, when two sections of an act could apply, and one is specific and one is general, the more specific section controls. *See Holmes v. Morales,* 924 S.W.2d 920, 923 (Tex. 1996).

When construing a statute, the chief objective is effectuating the Legislature's intent, and ordinarily, the truest manifestation of what lawmakers intended is what they enacted. *Combs v. Roark Amusement & Vending, L.P.,* 422 S.W.3d 632, 635 (Tex. 2013). The presumption is that the Legislature chooses a statute's language with care, including each word chosen for a purpose, while purposefully omitting words not

chosen. *See TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011).

The Container Exemption found in section 151.322 is more specific than the general Manufacturing Exemption found in section 151.318. Here, Champion is seeking a refund of sales and use tax paid on their purchases and leases of the Containers during the Periods at Issue. CR1 139. Since the Container Exemption is specifically tailored to addressing the Containers at issue in this appeal, it is the statute under which the Containers must be evaluated. But ultimately, Champion's Containers do not qualify for a tax exemption as indicated by the plain language of section 151.322.

The Texas Legislature has specifically stated three instances in which a taxpayer's containers can qualify for the Container Exemption. Tex. Tax Code § 151.322(a). First, a container which is sold with its contents is exempt from sales and use tax if the sales price of the contents is not taxed. Tex. Tax Code § 151.322(a)(1). Next, a nonreturnable container which is sold without contents to a person who fills the container and sells the contents and the container together is exempt from sales and use tax. Tex. Tax Code § 151.322(a)(2). Finally, a

returnable container which is sold with its contents or resold for refilling is exempt from sales and use tax. Tex. Tax Code § 151.322(a)(3). Champion's Containers do not meet the statutory criteria for any of these three instances. And since the Containers do not qualify for the Container exemption from sales and use tax, they are taxable.

First, Champion's purchase of Containers do not qualify for exemption under Texas Tax Code Section 151.322(a)(1). Section 151.322(a)(1) provides that containers are exempt from sales tax when the containers are sold with their contents and the contents are not subject to sales tax. Here, Champion admits the contents of the Containers are taxed. *See* CR1 at 207. Consequently, it does not qualify for the Container Exemption under Texas Tax Code Section 151.322(a)(1).

Next, Champion's purchases of Containers are not exempt under Texas Tax Code Section 151.322(a)(2). Section 151.322(a)(2) exempts nonreturnable containers which are sold empty to a buyer who fills the containers and sells both the container and the contents together. Here, the products Champion is ultimately selling are the chemicals it manufactures. CR1 158, 194. The Containers are not being sold to the

15

customers. Once their customers take possession of the chemicals it purchased, then the Containers are cleaned and returned to Champion. CR1 141-142. Therefore, Champion cannot obtain a refund of sales and use tax under Tex. Tax Code Section 151.322(a)(2) for the purchase of the Containers.

Finally, Champion's Containers do not qualify for a refund under Texas Tax Code Section 151.322(a)(3) which stipulates that for a returnable container to be exempt from tax, it must be sold with its contents or be resold for refilling. Here, Champion does not sell the container with the chemicals, instead it is provided solely for temporary use of transferring the chemicals to the customer. CR1 141-142, 159, 208-209. The Third Court of Appeals has previously interpreted Texas Tax Code Section 151.322(a)(3) to mean that "if the container is *returnable*, ... the seller of the goods pays the tax on his purchase of the container." *East Tex. Oxygen Co. v. State,* 681 S.W.2d 741, 745 (Tex. App. Austin—1984, no writ) (emphasis original). Further, consistent with traditional statutory construction principles and the rule of strict construction of exemptions, the Court found that even if the transactions were "within the literal definitions of the 'sale for resale'" exemption, the "provisions

*specifically* dealing with containers ... must prevail over and constitute an *exception* to the general rule that 'sales for resale' are exempt from sales tax." *Id*. at 744-45 (emphasis original).

Accordingly, Champion's purchase of the Containers is not exempt from sales and use tax under the Container Exemption because they are not exempt containers as contemplated under Texas Tax Code Section 151.322.

II. **The trial court erred in holding that the exemption for property used in manufacturing under Texas Tax Code Section 151.318 exempts Champion's Containers from Texas sales and use tax.**

A. **Champion's Containers are neither ingredients nor component parts of tangible personal property manufactured for ultimate sale.**

Champion's refund suits hinges on the theory that, because the Containers at issue were used to store and transport their completed chemical product after the chemicals were manufactured, the Containers were ingredients or component parts in the actual manufacturing of tangible personal property for ultimate sale within the meaning of the Manufacturing Exemption pursuant to Texas Tax Code Section 151.318(a)(1). This theory is incorrect.

17

In order to qualify for the Manufacturing Exemption, a taxpayer must meet two threshold requirements. First, the tangible personal property a taxpayer seeks exemption on must be sold or leased to a manufacturer. Tex. Tax Code § 151.318(a). Second, the personal property for which the taxpayer seeks exemption on must be used as an ingredient or component part of the tangible personal property manufactured for ultimate sale. Tex. Tax Code § 151.318(a)(1). Champion cannot meet the essential requirement for qualifying for the Manufacturing Exemption and therefore cannot receive a sales and use tax refund for their purchase of the Containers under this exemption.

Further, exemptions from taxation are subject to strict construction since they are the antithesis of equality and uniformity and because they place a greater burden on other taxpaying businesses and individuals. *See Bullock v. National BancShares Corp.*, 584 S.W.2d 268, 271-72 (Tex. 1979). An exemption cannot be raised by implication, but must affirmatively appear, and all doubts are resolved in favor of the taxing authority and against a claimant. *Id.* at 272.

Here, the products that Champion is ultimately selling to their customers are chemicals. The Containers at issue are neither ingredients

18

nor component parts of the chemicals as required by Texas Tax Code Section 151.318(a)(1). The Containers did not "enter into" and become part of the product. *See, e.g., Bullock v. Lone Star Indus., Inc.*, 584 S.W.2d 386, 388 (Tex.. App.—Waco 1979, writ ref'd n.r.e.) ("steel balls were tangible personal property which entered into and became an ingredient and component part of the cement manufactured by plaintiff").Champion's chemical manufacturing process consists of filling reactors with raw materials, blending the materials in the reactors, and if necessary, adding a catalyst such as a solid, liquid, or gas to initiate a chemical reaction. CR1 161, 205-206. The Containers are not an ingredient or component part of the chemicals during manufacturing. *Id.* After the chemicals have been manufactured and allowed to cool, a hose is used to enable the transfer of chemicals from the reactor to one of Champion's Containers. CR1 161-162, 206. Champion admits that the Containers are used to transport the chemicals to customers, and thereafter, are returned to Champion to fill other orders. CR1 141-142, 159, 208-209.

Therefore, because Champion's Containers are not an ingredient or component of the Chemicals it is ultimately selling, they are not exempt under Texas Tax Code Section 151.318(a)(1).

### B. Champion's Containers do not qualify for the Manufacturing Exemption because they are excluded pursuant to Texas Tax Code Section 151.318(c).

Even if Champion can meet its burden of proof in showing that the Manufacturing Exemption is applicable to its Containers, it still does not qualify for the exemption because it is excluded pursuant to Texas Tax Code Section 151.318(c).

The Manufacturing Exemption places the burden on the taxpayer to prove that they are entitled to an exemption. Tex. Tax Code §151.318(r). Additionally, a taxpayer seeking the Manufacturing Exemption must prove that no exclusion from the Manufacturing Exemption applies to the property they claim is exempt from sales and use tax. *Id.* §§ 151.318(r);(c)..

The manufacturing exemption statute specifically excludes equipment used in intraplant transportation, transportation, distribution activities, or transportation activities. *Id.*

20

§ 151.318(c)(3);151.318(c)(4). First, Champion's Containers are excluded from the Manufacturing Exemption because they are utilized as equipment in sales and distribution activities and transportation activities. *See* Tex. Tax Code Sections 151.318(c)(3). Specifically, Champion utilizes the Containers to deliver its chemicals to its end user customers. CR 141, 206.

Similar to a tanker truck delivering gasoline to the storage tanks of a service station, Champion used its Containers to distribute and transport chemicals to end-user customers. These distribution and transportation activities are specifically excluded pursuant to Texas Tax Code section 151.318(c)(3). Because the containers were equipment utilized for distribution and transportation activities, they are excluded from the Manufacturing Exemption pursuant to the exclusion codified in Texas Tax Code section 151.318(c)(3).

Next, Champion's Containers are excluded from the Manufacturing Exemption because they are equipment used to maintain or store tangible personal property. *See* Tex. Tax Code §151.318(c)(4). It is Champion's business practice to utilize the Containers for storage once the chemicals have been produced and are awaiting delivery to

21

customers. CR1 141, 207. Once the chemicals are complete and have been placed in the Containers, the Containers are transferred to a warehouse where they are stored until the chemicals are to be transported to end-user customers. *Id.*

For the foregoing reasons, Champion does not qualify for the Manufacturing Exemption because it is excluded pursuant to Texas Tax Code Section 151.318(c).

III. **The trial court erred in holding that the exemption for services on exempted property under Texas Tax Code Section 151.3111 applies to the cleaning, delivery, and pickup services performed on Champion's Containers.**

The trial court erred in determining that the transportation and cleaning services related to the Containers were tax exempt services under Texas Tax Code Section 151.3111.

First, as argued above, the Containers are not exempt from taxation; therefore, the related cleaning and transportation services are also not exempt from taxation. Section 151.3111 states, in relevant part:

> a service that is performed on tangible personal property that, if sold, leased, or rented, at the time of the performance of the service, would be exempted under this chapter because of the nature of the property, its use, or a combination of its nature and use, is exempted from this chapter.

22

Tex. Tax Code § 151.3111(a) (2011)[2].

Essentially, this tax exemption is for services performed on exempt property. If this Court determines that the Containers are not tax-exempt property, then the cleaning and transportation services performed on the Containers would not be exempt from taxation pursuant to Texas Tax Code Section 151.3111 and Champion cannot receive a refund.

Second, even if the Containers were personal property used in manufacturing and exempt from taxation, the cleaning and transportation services performed on them are not exempt under Texas Tax Code Section 151.3111 because the plain language of the statute requires the services to be performed at the time the property is exempt from taxation. *In re Texas Educ. Agency*, 619 S.W.3d 679, 687–88 (Tex. 2021) (citations omitted). Sales of services are exempt under section 151.3111 only if the property would be exempted "at the time" of the performance of the service. *See* Tex. Tax Code § 151.3111(a) (stating, "[…] a service that is performed on tangible personal property that, if sold,

---

[2] The Period at issue is March 1, 2011-October 31, 2018. The current version of Tex. Tax Code §151.3111 was effective September 1, 2011, and is cited here. The current version does not differ substantially from the previous version, save for the addition of the term, "Subject to Section 151.1551".

leased, or rented, ***at the time of the performance of the service***, would be exempted under this chapter because of the nature of the property, its use, or a combination of its nature and use, is exempted from this chapter.") (emphasis added)).

It is undisputed that the transportation and cleaning services were performed after the end-user emptied the container of its chemicals. CR1 142-142. The cleaning and transportation costs correspond to services done to empty containers after the sale and use of the chemicals in the containers. *Id*. The cleaning and transportation of empty containers, property which is not exempt from taxation, do not qualify as tax exempt services under section 151.3111. *See* Tex. Tax Code §151.322 (listing when a container is exempted from sales and use tax). The language of Section 151.3111 requires exemption from taxation for services which are significantly tied to the exempt tangible item.

Assuming the Containers themselves are tax exempt, services on the containers would only be tax exempt to the extent that, at the time of the service, the Containers were exempt based on either their nature or use. Because Champion argued that the Containers were tax-exempt based on their use in manufacturing, the services performed after the

manufacturing process was complete cannot be exempt from taxation under the plain language of Texas Tax Code Section 151.3111.

Accordingly, the trial court erred in finding that the cleaning and transportation services were exempt from taxation under Texas Tax Code Section 151.3111.

## PRAYER

For the foregoing reasons, the Court should reverse the trial court's judgment and render a take-nothing judgment on Champion's claims.

Respectfully submitted,

KEN PAXTON
Attorney General

BRENT WEBSTER
First Assistant Attorney
    General

RALPH MOLINA
Deputy First Assistant
    Attorney General

JAMES LLOYD
Deputy Attorney General for
    Civil Litigation

STEVEN ROBINSON
Division Chief, Tax Litigation
    Division

*/s/ Kelsey Hanson*
KELSEY HANSON
Assistant Attorney General
State Bar No. 24096654
Kelsey.Hanson@oag.texas.gov

Texas Office of the Attorney
General
Tax Litigation Division MC 029
P.O. Box 12548
Austin, Texas 78711-2548
Tel: 512-463-48897
Fax: (512) 478-4013

*Counsel for Appellants*

## CERTIFICATE OF COMPLIANCE

In compliance with Texas Rule of Appellate Procedure 9.4(i)(2), this brief is computer-generated containing 4,645 words, excluding the portions of the brief exempted by Rule 9.4(i)(1).

/s/ *Kelsey Hanson*

KELSEY HANSON
Assistant Attorney General

## CERTIFICATE OF SERVICE

I certify that on January 27, 2025, a copy of the foregoing pleading was served on all parties or attorneys of record via the service methods listed below.

### *Via Electronic Service and/or email:*

Deborah S. Sloan
dsloan@jonesday.com
JONES DAY
2727 N. Harwood Street, Suite 500
Dallas, Texas 75201-1515

John M. Allen
jmallen@jonesday.com
Antoinette L. Ellison
aellison@jonesday.com
JONES DAY
1221 Peachtree Street NE
Atlanta, Georgia 30361

**ATTORNEYS FOR APPELLEES**

*/s/ Kelsey Hanson*
KELSEY HANSON
Assistant Attorney General

# INDEX OF APPENDICES

Appendix A - Final Judgment (CR1 916-918)

Appendix B - Tex. Tax Code §151.322

Appendix C - Tex. Tax Code §151.318

Appendix D - Tex. Tax Code §151.3111

APPENDIX A - FINAL JUDGMENT (CR1 916-918)

CAUSE NO. D-1-GN-20-000139

| | | |
|---|---|---|
| CHAMPIONX, LLC, | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | TRAVIS COUNTY, TEXAS |
| GLENN HEGAR, COMPTROLLER OF | § | |
| PUBLIC ACCOUNTS OF THE STATE OF | § | |
| TEXAS, AND KEN PAXTON, | § | |
| ATTORNEY GENERAL OF THE STATE | § | |
| OF TEXAS; | § | 419th JUDICIAL DISTRICT |
| | § | |
| Defendants. | § | |
| | § | |

## FINAL JUDGMENT

Having considered Plaintiff's Unopposed Amended Motion for Entry of Final Judgment, it is hereby ORDERED AND ADJUDGED that:

1.      The exemption for property used in manufacturing under Tex. Tax Code § 151.318 exempts the portafeed drums, tanks, and totes (the "Property") at issue from Texas sales and use tax;

2.      The exemption for services on exempted property under Tex. Tax Code § 151.3111 applies to the cleaning, delivery, and/or pickup services performed on the Property at issue;

3.      The resulting refund amount due from the Comptroller to ChampionX, LLC ("ChampionX") (Taxpayer No. 13615204800) for the period of March 1, 2011 through February 28, 2014 is $219,609.20 of sales and use tax, plus statutory interest pursuant to Tex. Tax Code § 112.155;

4.      The resulting refund amount due from the Comptroller to ChampionX (Taxpayer No. 13615204800) for the period of January 1, 2013 through December 31, 2015 is $1,032,948.67 of sales and use tax, plus statutory interest pursuant to Tex. Tax Code § 112.155;

FINAL JUDGMENT – PAGE 1

5. The resulting refund amount due from the Comptroller to ChampionX (Taxpayer No. 13615204800 for the period of January 1, 2015 through September 30, 2017, is $1,424,794.60 of sales and use tax, plus statutory interest pursuant to Tex. Tax Code § 112.155;

6. The resulting refund amount due from the Comptroller to ChampionX (Taxpayer No. 13615204800) for the period of December 1, 2016 through October 31, 2018, is $708,602.92 of sales and use tax, plus statutory interest pursuant to Tex. Tax Code § 112.155;

7. The Court shall retain jurisdiction over the parties for the purposes of enforcing the terms and conditions of this Final Judgment.

8. Each party shall bear its own costs and fees.

9. This Final Judgment resolves all parties and all claims in the following cases:

| Case Number | Time Period |
|---|---|
| D-1-GN-20-000139 | March 1, 2011 through February 28, 2014 |
| D-1-GN-21-000699 | January 1, 2013 through December 31, 2015 |
| D-1-GN-22-003715 | January 1, 2015 through September 30, 2017 and December 1, 2016 through October 31, 2018 |

10. This Final Judgment is final and appealable.

Signed on ___9|19___, 2024.

_____
DISTRICT JUDGE PRESIDING

FINAL JUDGMENT – PAGE 2

**APPROVED AS TO FORM AND SUBSTANCE:**

*/s/Deborah S. Sloan*
Deborah S. Sloan
State Bar No. 00786230
JONES DAY
2727 N. Harwood Street
Suite 500
Dallas, Texas 75201-1515
Telephone: (214) 220-3939
Facsimile: (214) 969-5100
dsloan@jonesday.com

John M. Allan
Antoinette L. Ellison
JONES DAY
1221 Peachtree Street NE
Suite 400
Atlanta, Georgia 30361
Telephone: (404) 521-3939
Facsimile: (404) 581-8330
jmallan@jonesday.com
aellison@jonesday.com
*Counsel for Plaintiff*

I, VELVA L. PRICE, District Clerk, Travis County,
Texas, do hereby certify that this is a true and
correct copy as same appears of record in my
office. Witness my hand and seal of office
On 11/22/2024 12:23:52

VELVA L. PRICE
DISTRICT CLERK
By Deputy:

FINAL JUDGMENT – PAGE 3

APPENDIX B - TEX. TAX CODE §151.322 (CONTAINERS)

Vernon's Texas Statutes and Codes Annotated
Tax Code (Refs & Annos)
Title 2. State Taxation (Refs & Annos)
Subtitle E. Sales, Excise, and Use Taxes
Chapter 151. Limited Sales, Excise, and Use Tax (Refs & Annos)
Subchapter H. Exemptions (Refs & Annos)

V.T.C.A., Tax Code § 151.322

§ 151.322. Containers

Currentness

(a) The following are exempted from the taxes imposed by this chapter:

(1) a container sold with its contents if the sales price of the contents is not taxed under this chapter;

(2) a nonreturnable container sold without contents to a person who fills the container and sells the contents and the container together; and

(3) a returnable container sold with its contents or resold for refilling.

(b) In this section:

(1) "Returnable container" means a container of a kind customarily returned for reuse by the buyer of the contents.

(2) "Nonreturnable container" means a container other than a returnable container.

(3) "Container" means glass, plastic, or metal bottles, cans, barrels, and cylinders, but does not include any item of a type described in Section 151.302(d).

**Credits**
Acts 1981, 67th Leg., p. 1566, ch. 389, § 1, eff. Jan. 1, 1982. Amended by Acts 1991, 72nd Leg., 1st C.S., ch. 5, § 14.10.

Notes of Decisions (9)

V. T. C. A., Tax Code § 151.322, TX TAX § 151.322
Current through the end of the 2023 Regular, Second, Third and Fourth Called Sessions of the 88th Legislature, and the Nov. 7, 2023 general election.

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

APPENDIX C - TEX. TAX CODE §151.318 (PROPERTY USED IN MANUFACTURING)

Vernon's Texas Statutes and Codes Annotated
  Tax Code (Refs & Annos)
    Title 2. State Taxation (Refs & Annos)
      Subtitle E. Sales, Excise, and Use Taxes
        Chapter 151. Limited Sales, Excise, and Use Tax (Refs & Annos)
          Subchapter H. Exemptions (Refs & Annos)

V.T.C.A., Tax Code § 151.318

§ 151.318. Property Used in Manufacturing

Currentness

(a) The following items are exempted from the taxes imposed by this chapter if sold, leased, or rented to, or stored, used, or consumed by a manufacturer:

(1) tangible personal property that will become an ingredient or component part of tangible personal property manufactured, processed, or fabricated for ultimate sale;

(2) tangible personal property directly used or consumed in or during the actual manufacturing, processing, or fabrication of tangible personal property for ultimate sale if the use or consumption of the property is necessary or essential to the manufacturing, processing, or fabrication operation and directly makes or causes a chemical or physical change to:

(A) the product being manufactured, processed, or fabricated for ultimate sale; or

(B) any intermediate or preliminary product that will become an ingredient or component part of the product being manufactured, processed, or fabricated for ultimate sale;

(3) services performed directly on the product being manufactured prior to its distribution for sale and for the purpose of making the product more marketable;

(4) actuators, steam production equipment and its fuel, in-process flow through tanks, cooling towers, generators, heat exchangers, transformers and the switches, breakers, capacitor banks, regulators, relays, reclosers, fuses, interruptors, reactors, arrestors, resistors, insulators, instrument transformers, and telemetry units that are related to the transformers, electronic control room equipment, computerized control units, pumps, compressors, and hydraulic units, that are used to power, supply, support, or control equipment that qualifies for exemption under Subdivision (2) or (5) or to generate electricity, chilled water, or steam for ultimate sale; transformers located at an electric generating facility that increase the voltage of electricity generated for ultimate sale, the electrical cable that carries the electricity from the electric generating equipment to the step-up transformers, and the switches, breakers, capacitor banks, regulators, relays, reclosers, fuses, interruptors, reactors, arrestors, resistors, insulators, instrument transformers, and telemetry units that are related to the step-up transformers; and transformers that decrease the voltage of electricity generated for ultimate sale and the switches, breakers, capacitor banks, regulators, relays, reclosers, fuses, interruptors, reactors, arrestors, resistors, insulators, instrument transformers, and telemetry units that are related to the step-down transformers;

(5) tangible personal property used or consumed in the actual manufacturing, processing, or fabrication of tangible personal property for ultimate sale if the use or consumption of the property is necessary and essential to a pollution control process;

(6) lubricants, chemicals, chemical compounds, gases, or liquids that are used or consumed during the actual manufacturing, processing, or fabrication of tangible personal property for ultimate sale if their use or consumption is necessary and essential to prevent the decline, failure, lapse, or deterioration of equipment exempted by this section;

(7) gases used on the premises of a manufacturing plant to prevent contamination of raw material or product, or to prevent a fire, explosion, or other hazardous or environmentally damaging situation at any stage in the manufacturing process or in loading or storage of the product or raw material on premises;

(8) tangible personal property used or consumed during the actual manufacturing, processing, or fabrication of tangible personal property for ultimate sale if the use or consumption of the property is necessary and essential to a quality control process that tests tangible personal property that is being manufactured, processed, or fabricated for ultimate sale;

(9) safety apparel or work clothing that is used during the actual manufacturing, processing, or fabrication of tangible personal property for ultimate sale if:

   (A) the manufacturing process would not be possible without the use of the apparel or clothing; and

   (B) the apparel or clothing is not resold to the employee;

(10) tangible personal property used or consumed in the actual manufacturing, processing, or fabrication of tangible personal property for ultimate sale if the use or consumption of the property is necessary and essential to comply with federal, state, or local laws or rules that establish requirements related to public health; and

(11) tangible personal property specifically installed to:

   (A) reduce water use and wastewater flow volumes from the manufacturing, processing, fabrication, or repair operation;

   (B) reuse and recycle wastewater streams generated within the manufacturing, processing, fabrication, or repair operation; or

   (C) treat wastewater from another industrial or municipal source for the purpose of replacing existing freshwater sources in the manufacturing, processing, fabrication, or repair operation.

(b) The exemption includes:

(1) chemicals, catalysts, and other materials that are used during a manufacturing, processing, or fabrication operation to produce or induce a chemical or physical change, to remove impurities, or to make the product more marketable;

(2) semiconductor fabrication cleanrooms and equipment; and

(3) pharmaceutical biotechnology cleanrooms and equipment that are installed as part of the construction of a new facility on which construction began after July 1, 2003.

(c) The exemption does not include:

(1) intraplant transportation equipment, including intraplant transportation equipment used to move a product or raw material in connection with the manufacturing process and specifically including all piping and conveyor systems, provided that the following remain eligible for the exemption:

(A) piping or conveyor systems that are a component part of a single item of manufacturing equipment or pollution control equipment eligible for the exemption under Subsection (a)(2), (a)(4), or (a)(5);

(B) piping through which the product or an intermediate or preliminary product that will become an ingredient or component part of the product is recycled or circulated in a loop between the single item of manufacturing equipment and the ancillary equipment that supports only that single item of manufacturing equipment if the single item of manufacturing equipment and the ancillary equipment operate together to perform a specific step in the manufacturing process; and

(C) piping through which the product or an intermediate or preliminary product that will become an ingredient or component part of the product is recycled back to another single item of manufacturing equipment and its ancillary equipment in the same manufacturing process;

(2) hand tools;

(3) maintenance supplies not otherwise exempted under this section, maintenance equipment, janitorial supplies or equipment, office equipment or supplies, equipment or supplies used in sales or distribution activities, research or development of new products, or transportation activities;

(4) machinery and equipment or supplies to the extent not otherwise exempted under this section used to maintain or store tangible personal property; or

(5) tangible personal property used in the transmission or distribution of electricity, including transformers, cable, switches, breakers, capacitor banks, regulators, relays, reclosers, fuses, interruptors, reactors, arrestors, resistors, insulators, instrument transformers, and telemetry units not otherwise exempted under this section, and lines, conduit, towers, and poles.

(d) In this section, "manufacturing" includes each operation beginning with the first stage in the production of tangible personal property and ending with the completion of tangible personal property having the physical properties (including packaging, if any) that it has when transferred by the manufacturer to another.

(e) This section does not apply to any taxable item rented or leased for less than one year to a person engaged in manufacturing.

(f) For purposes of Subsection (c)(1), piping through which material is transported forward from one single item of manufacturing equipment and its ancillary support equipment to another single item of manufacturing equipment and its ancillary support equipment is not considered a component part of a single item of manufacturing equipment and is not exempt. An integrated group of manufacturing and processing machines and ancillary equipment that operate together to create or produce the product or an intermediate or preliminary product that will become an ingredient or component part of the product is not a single item of manufacturing equipment.

(g) Repealed by Acts 1999, 76th Leg., ch. 1467, § 4.01(3).

(h) to (m) Repealed by Acts 1997, 75th Leg., ch. 1390, § 3.

(n) A person engaged in overhauling, retrofitting, or repairing jet turbine aircraft engines and their component parts is entitled to an exemption from the tax imposed by this chapter for the purchase of machinery, equipment, or replacement parts or accessories with a useful life in excess of six months, or supplies, including aluminum oxide, nitric acid, and sodium cyanide, used in electrochemical plating or a similar process that are used or consumed in the overhauling, retrofitting, or repairing.

(o) The production of a publication for the dissemination of news of a general character and of a general interest that is printed on newsprint and distributed to the general public free of charge at a daily, weekly, or other short interval is considered "manufacturing" for purposes of this section.

(p) For the purposes of this section, the manufacturing of computer software begins with the design and writing of the code or program for the software and includes the testing or demonstration of the software.

(q) For purposes of Subsection (b), "semiconductor fabrication cleanrooms and equipment" means all tangible personal property, without regard to whether the property is affixed to or incorporated into realty, used in connection with the manufacturing, processing, or fabrication in a cleanroom environment of a semiconductor product, without regard to whether the property is actually contained in the cleanroom environment. The term includes integrated systems, fixtures, and piping, all property necessary or adapted to reduce contamination or to control airflow, temperature, humidity, chemical purity, or other environmental conditions or manufacturing tolerances, and production equipment and machinery. The term does not include the building or a permanent, nonremovable component of the building, that houses the cleanroom environment. The term includes moveable cleanroom partitions and cleanroom lighting. "Semiconductor fabrication cleanrooms and equipment" are not "intraplant transportation equipment" as that term is used in Subsection (c)(1).

(q-1) For purposes of Subsection (b), "pharmaceutical biotechnology cleanrooms and equipment" means all tangible personal property, without regard to whether the property is affixed to or incorporated into realty, used in connection with the manufacturing, processing, or fabrication in a cleanroom environment of a pharmaceutical biotechnology product, without

regard to whether the property is actually contained in the cleanroom environment. The term includes integrated systems, fixtures, and piping, all property necessary or adapted to reduce contamination or to control airflow, temperature, humidity, chemical purity, or other environmental conditions or manufacturing tolerances, and production equipment and machinery. The term does not include the building or a permanent, nonremovable component of the building that houses the cleanroom environment. The term includes moveable cleanroom partitions and cleanroom lighting. "Pharmaceutical biotechnology cleanrooms and equipment" are not "intraplant transportation equipment" as that term is used in Subsection (c)(1).

(r) A taxpayer claiming an exemption under this section has the burden of proof that the exemption is applicable and that no exclusion under Subsection (c) applies.

(s) The following do not apply to the semiconductor fabrication cleanrooms and equipment in Subsection (q) or the pharmaceutical biotechnology cleanrooms and equipment in Subsection (q-1):

(1) limitations in Subsection (a)(2) that refer to tangible personal property directly causing chemical and physical changes to the product being manufactured, processed, or fabricated for ultimate sale;

(2) Subsection (c)(1); and

(3) Subsection (c)(4).

(t) In addition to the other items exempted under this section, pre-press machinery, equipment, and supplies, including computers, cameras, photographic props, film, film developing chemicals, veloxes, plate-making machinery, plate metal, litho negatives, color separation negatives, proofs of color negatives, production art work, and typesetting or composition proofs, that are necessary and essential to and used in connection with the printing process are exempted from the tax imposed by this chapter if they are purchased by a person engaged in:

(1) printing or imprinting tangible personal property for sale; or

(2) producing a publication for the dissemination of news of a general character and of a general interest that is printed on newsprint and distributed to the general public free of charge at a daily, weekly, or other short interval.

**Credits**

Acts 1981, 67th Leg., p. 1564, ch. 389, § 1, eff. Jan. 1, 1982. Amended by Acts 1984, 68th Leg., 2nd C.S., ch. 31, art. 7, §§ 13, 19, eff. Oct. 2, 1984; Acts 1987, 70th Leg., 2nd C.S., ch. 5, art. 1, pt. 4, § 26; Acts 1989, 71st Leg., ch. 154, § 1, eff. Aug. 28, 1989; Acts 1991, 72nd Leg., ch. 705, § 15, eff. Sept. 1, 1991; Acts 1991, 72nd Leg., 1st C.S., ch. 5, § 14.081(a); Acts 1993, 73rd Leg., ch. 404, § 1, eff. Oct. 1, 1993; Acts 1993, 73rd Leg., ch. 587, § 14, eff. Oct. 1, 1993; Acts 1995, 74th Leg., ch. 1000, § 17, eff. Oct. 1, 1995; Acts 1997, 75th Leg., ch. 1010, § 4.40, eff. July 1, 1997; Acts 1997, 75th Leg., ch. 1040, § 22, eff. Oct. 1, 1997; Acts 1997, 75th Leg., ch. 1390, §§ 1 to 3, eff. Oct. 1, 1997; Acts 1999, 76th Leg., ch. 62, § 19.01(91), eff. Sept. 1, 1999; Acts 1999, 76th Leg., ch. 1467, § 2.19, eff. Oct. 1, 1999; Acts 1999, 76th Leg., ch. 1467, § 4.01, eff. June 19, 1999; Acts 2001, 77th Leg., ch. 1263, § 22, eff. Oct. 1, 2001; Acts 2001, 77th Leg., ch. 1420, § 21.001(100), eff. Sept. 1, 2001; Acts 2003, 78th Leg., ch. 1310, § 106, eff. June 20, 2003; Acts 2007, 80th Leg., ch. 1266, § 6(a), eff. July 1, 2007.

**Editors' Notes**

### REPEAL OF SUBSEC. (G)

<Without reference to the amendment of subsec. (g) by Acts 1997, 75th Leg., ch. 1010, § 4.40, Acts 1997, 75th Leg., ch. 1390, § 3 repealed subsec. (g) effective Oct. 1, 1997.>

Notes of Decisions (35)

V. T. C. A., Tax Code § 151.318, TX TAX § 151.318
Current through the end of the 2023 Regular, Second, Third and Fourth Called Sessions of the 88th Legislature, and the Nov. 7, 2023 general election.

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

APPENDIX D - TEX. TAX CODE §151.3111 (SERVICES ON CERTAIN EXEMPTED PERSONAL PROPERTY)

Vernon's Texas Statutes and Codes Annotated
    Tax Code (Refs & Annos)
        Title 2. State Taxation (Refs & Annos)
            Subtitle E. Sales, Excise, and Use Taxes
                Chapter 151. Limited Sales, Excise, and Use Tax (Refs & Annos)
                    Subchapter H. Exemptions (Refs & Annos)

V.T.C.A., Tax Code § 151.3111

§ 151.3111. Services on Certain Exempted Personal Property

Currentness

(a) Subject to Section 151.1551, a service that is performed on tangible personal property that, if sold, leased, or rented, at the time of the performance of the service, would be exempted under this chapter because of the nature of the property, its use, or a combination of its nature and use, is exempted from this chapter.

(b) Subsection (a) does not apply to the performance of a service on:

(1) tangible personal property that would be exempted solely because of the exempt status of the seller of the property;

(2) tangible personal property that is exempted solely because of the application of Section 151.303, 151.304, or 151.306;

(3) motor vehicles, trailers, or semitrailers as defined, taxed, or exempted by Chapter 152; or [1]

(4) a taxable boat or motor as defined by Section 160.001. [1]

(5) Deleted by Acts 1999, 76th Leg., ch. 631, § 13, eff. Oct. 1, 2001.

(6) Tangible personal property exempt under Section 151.326.

(c) A taxable service performed on a motor vehicle, trailer, or semitrailer exempted under Section 152.086, 152.087, or 152.088 of this code is exempted from the taxes imposed by this chapter. A taxable service performed on a motor vehicle held for rental in the regular course of business, but not rented, or held for sale in the regular course of business is exempted from the taxes imposed by this chapter.

**Credits**
Added by Acts 1984, 68th Leg., 2nd C.S., ch. 31, art. 7, § 12, eff. Oct. 2, 1984. Amended by Acts 1991, 72nd Leg., 1st C.S., ch. 5, § 7.03, eff. Oct. 1, 1991; Acts 1995, 74th Leg., ch. 1000, § 11, eff. Oct. 1, 1995; Acts 1999, 76th Leg., ch. 394, § 4, eff. June 3, 1999; Acts 1999, 76th Leg., ch. 631, § 13, eff. Oct. 1, 2001; Acts 2011, 82nd Leg., ch. 225 (H.B. 268), § 2, eff. Sept. 1, 2011.

WESTLAW   © 2025 Thomson Reuters. No claim to original U.S. Government Works.

### Footnotes

1       Text as amended by Acts 1999, 76th Leg., ch. 631. Subdivision (4) should probably read "; or" in lieu of the period.

V. T. C. A., Tax Code § 151.3111, TX TAX § 151.3111

Current through the end of the 2023 Regular, Second, Third and Fourth Called Sessions of the 88th Legislature, and the Nov. 7, 2023 general election.

**End of Document**                                                                     © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Mary Lou Swanson on behalf of Kelsey Hanson
Bar No. 24096654
marylou.swanson@oag.texas.gov
Envelope ID: 96660073
Filing Code Description: Brief Requesting Oral Argument
Filing Description: 20240127 Appellants Brief
Status as of 1/28/2025 7:19 AM CST

Associated Case Party: ChampionX, LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Deborah Sloan | 786230 | dsloan@jonesday.com | 1/27/2025 6:29:16 PM | SENT |
| Carla Dennis | | cydennis@jonesday.com | 1/27/2025 6:29:16 PM | SENT |
| John MAllan | | jmallan@jonesday.com | 1/27/2025 6:29:16 PM | SENT |
| Antoinette L.Ellison | | aellison@jonesday.com | 1/27/2025 6:29:16 PM | SENT |

Associated Case Party: Ken Paxton, Attorney General of the State of Texas

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Kelsey Hanson | 24096654 | kelsey.hanson@oag.texas.gov | 1/27/2025 6:29:16 PM | SENT |