STATE of Texas et al., Appellants,

v.

The B. F. GOODRICH COMPANY, Appellee.

No. 5612.

Court of Civil Appeals of Texas, Eastland.

June 4, 1981.

Rehearing Denied July 2, 1981.

Diane Van Helden, Asst. Atty. Gen., Austin, for appellants.

Monty G. Humble, Clark, Thomas, Winters & Shapiro, Austin, for appellee.

DICKENSON, Justice.

This case involves the interpretation of a statutory exemption from the State sales

tax. The B. F. Goodrich Company sued the State of Texas, its Comptroller of Public Accounts, its Treasurer, and its Attorney General. Goodrich sought a refund of sales taxes which had been paid under protest, contending that certain items were exempt from the tax because they were used or consumed in the manufacturing process and were necessary or essential to the manufacturing operations. Following a nonjury trial, judgment was rendered for Goodrich in the sum of $125,420.19 plus interest and costs. Defendants appeal. We affirm.

The trial court made findings of fact under Tex.R.Civ.P. 296 which include the following:

    \*    \*    \*    \*    \*    \*

2. The periods at issue in this litigation are all calendar quarters commencing on or after October 1, 1973, and ending on or before March 31, 1977 (the "calendar quarters").

    \*    \*    \*    \*    \*    \*

12. Goodrich is an integrated manufacturer of rubber products. It performs each of the steps in the manufacture of finished rubber products, commencing with the creation of the basic chemical components from which rubber is made.

13. At each stage of the manufacturing process, Goodrich produces more material than it can consume internally because the earlier, more basic manufacturing steps are susceptible to economics of scale which are not possible in the later manufacturing stages.

14. The raw rubber plants at Port Neches and Orange produce approximately 150,000,000 pounds of rubber per quarter, of which approximately 75,000,000 pounds are used by the eight finished goods plants owned by Goodrich and the remainder is sold to third parties.

15. A finished goods plant may either manufacture tires, or other rubber products such as belts, hoses, etc. Goodrich's plants which utilize rubber from Port Neches and Orange consist of both types. In addition to the rubber polymers from Port Neches and Orange, these plants receive approximately 65% (by weight) of their raw materials from other sources. These other raw materials are either types of rubber not produced by the Port Neches and Orange plants, or are non-rubber ingredients for finished goods.

16. Goodrich uses approximately 143 different rubber blending recipes for the compounds which make up the components of its tires. The recipes require anywhere from 4 to 15 ingredients, a number of which will be various rubber types. A single tire will contain up to fifteen (15) different rubber compounds which are employed in various individual components of the tires.

17. A single production run of tires at a tire plant will require that each of the rubber compounds necessary to manufacture the tires be available. Recipes are made up in 1,000 pound batches, and a single production run of tires may require anywhere from 5 to 100 batches of a single receipt. Thus, a wide variety of rubber types are utilized by the tire plant in varying quantities at any one time.

18. This production demand for relatively small amounts of a number of ingredients makes it impossible for the production of finished goods to be matched to the production of raw rubber. The raw rubber plant produces a single rubber type in large quantities at a single time. The finished goods plant consumes small quantities of that rubber type over an extended period of time.

19. The characteristics of the types of raw rubber are an essential consideration in the design of the finished goods produced by Goodrich. Each shipment of rubber received by a finished goods plant must be tested prior to use by that plant.

20. This testing is an industry-wide requirement for raw rubber, and accordingly, the testing is performed by the Port Neches or Orange plants as well as by the other suppliers of raw rubber to the finished goods plants.

21. The quality testing requires approximately two days to complete during which time the rubber cannot be shipped or sold to other purchasers because the

raw rubber is not considered acceptable for use until its physical characteristics are known to be in conformity with the industry specifications for that type of rubber.

22. The raw rubber used by Goodrich, whatever its type, is sticky and will cohere to other synthetic rubber as well as to foreign materials such as dust, dirt, paper, etc. For this reason, the raw rubber must be coated before it is removed from the production line.

23. This coating consists of talc, bentonite, or a thin polyethelene film (1.5 mil.) which resembles Saran Wrap. Once placed on the bales of rubber, the nonstick coating becomes a part of the bale which is impossible to remove without cutting a portion of the bale away.

\* \* \* \* \* \*

25. In addition to the nonstick coating materials, the Plaintiff also uses other packaging materials, primarily cardboard boxes, shrink pack film, and wooden pallets. As the last stage in the raw rubber manufacturing operation, the bales are stacked into a shipping unit. Then, either a cardboard box is placed around the bales or a heavy (5 mil.) plastic film (shrink pack film) is placed over them and shrunk into place.

26. After this is done, the raw rubber is left in this condition until required for use at the finished product plant at which time the cardboard or film is stripped away and the individual bales are placed in the manufacturing stream.

27. The packaging is necessary to prevent contamination and deformation through "cold flow" (i. e., the tendency of rubber to flow at room temperature into a puddle) prior to utilization in the finished goods process.

28. Although it is not feasible from an engineering standpoint to have an integrated rubber product facility which performs all the steps in manufacturing from the initial raw chemical to the final product (e. g. tires, belts, hoses, etc.) due to the differences in demand for individual types of rubber, the standard practice

in the industry is to coordinate the steps to minimize expense.

29. A bale of rubber produced by the raw rubber plants at Port Neches or Orange is required by industry specification to be 8″ × 14″ 28″ so that finished goods plant equipment will accept the bale without cutting or reshaping.

30. Many of the types of rubber manufactured by Goodrich would be severely misshapen and unusable as a result of cold flow within 5 to 10 minutes unless supported by rigid packaging.

31. The Wrapping Materials are necessary to prevent contamination of the raw rubber which would otherwise result from the tendency of rubber to stick to itself and to foreign materials. In addition, packaging eliminates the need for contamination testing at the finished goods plant because puncture sites can be easily identified and foreign materials removed.

32. Contaminated raw rubber is not suitable for use in the production of finished goods and must be discarded.

33. The moisture content of rubber is critical to its processing into finished goods.

34. The Wrapping Materials maintain the moisture content at an acceptable level.

35. A shipping unit of raw rubber will weigh from 2000 to 2700 pounds, depending upon the type of rubber. Without the use of the Wrapping Materials the shipping unit would deform and stick together into a single mass of unusable rubber.

36. Goodrich would not manufacture raw rubber unless it had the technology to package it so that its shape and purity could be maintained.

37. The manufacture of raw rubber involves a continuous process which begins when the raw materials are introduced into the Port Neches or Orange plants, and does not end until the raw rubber is stacked, wrapped and packaged at the end of the production line. The rubber is not touched by plant personnel

or moved except by pipeline or conveyor until the manufacturing process is completed.

\* \* \* \* \* \*

Defendants have not challenged any of the trial court's findings of fact, and these facts are conclusively established. See *Whitten v. Alling & Cory Company,* 526 S.W.2d 245, at 248 (Tex.Civ.App.-Tyler 1975, writ ref'd).

Defendants have briefed two points of error, arguing that the trial court erred in concluding that the materials purchased and used by Goodrich were exempt from sales and use tax under Tex.Tax.-Gen.Ann. art. 20.04(E)(1)(b) (Vernon 1969)[1] because (1) the materials are "incidental to" and not "necessary and essential to" the manufacturing process and (2) the materials are used in transportation activities and thus specifically excepted from the exemption pursuant to Article 20.04(E)(1)(b)(iv). Both points of error are overruled. We hold that the trial court properly applied this statutory exemption. The conclusively established facts support Goodrich's contention that the wrapping materials are necessary and essential to the manufacturing process and are not merely related to transportation activities. The synthetic rubber would not be a usable product without the wrapping and packaging materials because of contamination, "cold flow," and the fact that the synthetic rubber would stick to other blocks of synthetic rubber. We hold that the manufacturing process is not completed until the blocks of synthetic rubber are wrapped and packaged.[2]

We do not reach the cross-points which argue that these materials are also exempt from sales tax under other provisions of Article 20.04(E), supra.

The judgment of the trial court is affirmed.

---

1. This exemption to the sales, excise and use tax concerns tangible personal property used in manufacturing. It reads in pertinent part as follows:

   There are exempted from the taxes imposed by this Chapter the receipts from the sale, lease or rental of, and the storage, use or other consumption in this State of: ... (b) tangible personal property used or consumed in or during any phase of such actual manufacturing, processing or fabricating operation, provided that the use or consumption of such tangible personal property is necessary or essential to the performance of such operations.... The exemption provided herein does not include the following: ...
   (iv) tangible personal property used by a manufacturer, processor or fabricator in any activities other than the actual manufactur-ing, processing or fabricating operation such as office equipment and supplies, equipment and supplies used in selling or distributing activities, in research and development of new products, or in transportation activities.

2. Tex.Tax.-Gen.Ann. art. 20.01 (Vernon 1969) sets forth the definitions which are to be used in construing the sales, excise and use tax. Section (U) of that article defines "manufacturing" as meaning and including "... every operation commencing with the first production stage of any article of tangible personal property and ending with the completion of tangible personal property having the physical properties (including packaging, if any) which it has when transferred by the manufacturer to another."