**EAST TEXAS OXYGEN CO., Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 13893.

Court of Appeals of Texas,
Austin.

Oct. 3, 1984.

Sander Shapiro, Austin, for appellant.

Jim Mattox, Atty. Gen., Gilbert J. Bernal, Jr., Asst. Atty. Gen., Austin, for appellee.

Before PHILLIPS, C.J., and EARL W. SMITH and FLAMMAGE, JJ.

PER CURIAM.

East Texas Oxygen Co. (ETOC) filed an action for recovery of excess sales or use taxes paid under protest to appellee Bob Bullock, Comptroller of Public Accounts, after Bullock disallowed ETOC's claim for refund of such taxes. Art. 20.10(H) (§ 112.051).[1]

ETOC purchased certain cylinders in question from various suppliers, and did not pay sales tax to the suppliers, but instead gave them "resale certificates." The average cost of each cylinder to ETOC was approximately $75, and ETOC depreciates the cylinders over a useful life of fifteen years. ETOC then filled the cylinders with gas. ETOC then simultaneously leased the cylinders and sold the gas therein to various buyers. ETOC leases the cylinders at a rental of fifty cents per month, and makes the charge separate from the charges for the sale of the gas. ETOC derived 18% of its revenue during the years in question from the lease of these cylinders. Some of the buyers gave ETOC a resale certificate, and in turn sold the gas and leased the cylinders to other buyers who consumed the gas and paid to the former buyers a sales tax on the receipts from the lease of the cylinders. The other buyers consumed the gas and paid to ETOC a sales tax on ETOC's receipts from the lease of the cylinders, which ETOC remitted to the State. The Comptroller and the district court held that ETOC was liable to pay a sales or use tax on the sales price paid by ETOC to ETOC's suppliers for the cylinders.

A sales tax is imposed "on the receipts from the sale at retail of all taxable items within this State." Art. 20.02 (§ 151.051). "Retail Sale" or "Sale at Retail" is defined as "any sale of a taxable item"; "taxable item" is defined as "tangible personal property." Art. 20.01(I), (P), (W) (§§ 151.052, 151.009, 151.010). An excise tax is imposed on the use of taxable items purchased from

---

1. All statute citations are to Tex.Tax.-Gen.Ann. (1969) and are followed by a citation in parentheses to the corresponding section of Tex.Tax Code (1982). The sales or uses taxed in this case occurred during the years 1970 through 1974, and the law in effect during that period determines whether or not ETOC is liable for taxes thereon.

any retailer for use in this State, at the same rate as the tax imposed in art. 20.02, on the sales price of the taxable item. Art. 20.03 (§ 151.101). "Use" includes the exercise of any right or power incident to its ownership but does not include its sale in the regular course of business. Art. 20.-01(R) (§ 151.011). However, if receipts from the sale of a taxable item are required to be included in the measure of the sales tax imposed by art. 20.02, the use of that taxable item is exempted from the use tax imposed by art. 20.03. Art. 20.04(K) (§ 151.303). Every retailer is required to add to his sales price the sales tax imposed by art. 20.02, and the sales tax becomes a debt of the purchaser until paid. Art. 20.-021(A) (§ 151.052). Persons using taxable items in this State are liable to pay the art. 20.03 use tax, but can relieve this liability by paying the tax to a retailer engaged in a business in this state, and retaining a receipt from such a retailer. Art. 20.031(A) (151.102). The retailer is required to pay the sales taxes and remit the use taxes to the State. Art. 20.05(B), (D)(1), (2) (§§ 151.-410, 151.406). All gross receipts are presumed to be receipts from "sales at retail" and subject to the sales tax, and all property sold for delivery in this State is presumed to be sold for use in this State and subject to the use tax, until the seller carries his burden to prove the contrary, *unless* the seller takes in good faith a "resale certificate" from the purchaser. Arts. 20.-021(F); 20.031(F) (§§ 151.054, 151.104). A purchaser may give a "resale certificate" to the seller if at the time of the purchase the purchaser intends to sell, lease, or rent in the regular course of business the taxable item purchased, or is unable to determine whether he will do so or use the item for some other purpose. Arts. 20.021(G), 20.031(G) (§ 151.051). However, if a purchaser who gives a resale certificate makes any use of the tangible personal property other than retention, demonstration, or display while holding it for sale, lease, or rental in the regular course of business or for transfer as an integral part of a taxable service in the regular course of business, the use is taxable to the purchaser when

the property is first so used, and the sales price of the property to the purchaser is the measure of the tax. Arts. 20.021(I), 20.031(I) (§ 151.154).

The receipts from all "sales for resale, leasing, [or] renting" are exempted from the taxes imposed by chapter twenty, i.e. the sales and use taxes imposed by arts. 20.02 and 20.03. Art. 20.04(O)(1) (§ 151.-302). "Sale for Resale" is defined as "a sale of tangible personal property to any purchaser who is purchasing said tangible personal property for the purpose of reselling it ... in the normal course of business either in the form or condition in which it is purchased, or as an attachment to, or integral part of, other tangible personal property," or as "a sale of tangible personal property to a purchaser for the sole purpose of that purchaser's renting or leasing ... the tangible personal property to another person...." Art. 20.01(S) (§ 151.-006). "Sale" includes any lease or rental of tangible personal property for a consideration. Art. 20.01(K)(1)(a) (§ 151.005).

The receipts of sales and the use of the following are exempt from the sales and use taxes: (1) nonreturnable containers when sold without the contents to persons who place the contents in the container and sell the contents together with the container; (2) containers when sold with the contents if the sales price of the contents is not required to be included in the measure of the sales or use tax; and (3) returnable containers when sold with the contents in connection with a retail sale of the contents or when resold for refilling. "Returnable containers" are containers "of a kind customarily returned by the buyer of the contents for reuse; all other containers are "nonreturnable containers." Art. 20.-04(E)(3) (§ 151.322).

ETOC insists for several reasons that it is not liable to pay a sales or use tax on the sales price paid to ETOC's suppliers for the cylinders. First, ETOC argues that its purchase of the cylinders is not a "sale at retail" subject to the sales tax under art. 20.02, but is a sale at wholesale. In connection with this argument ETOC invokes

the rule that statutes imposing a tax are to be strictly construed. Second, ETOC maintains that even if its purchase is a "sale at retail" subject to the sales tax, this sale is exempted from the sales and use tax because it is a "sale for resale, leasing, [or] renting." ETOC argues that this sale is a "sale for resale" because ETOC purchased the cylinders "for the purpose of reselling" them "in the normal course of business in the form or condition in which [they are] purchased, or as an attachment to, or integral part of, other tangible personal property." ETOC contends that it is "reselling" the cylinders when it leases the cylinders to its buyers because the "sale" is defined to include the lease or rental of the cylinders, and because the cylinders were previously sold to ETOC. In support of its contention that it buys the cylinders for the purpose of reselling them, and not merely as a means of delivering gas to gas buyers, ETOC calls attention to the fact it derived 18% of its revenues during the years 1970–74 from cylinder rentals, notwithstanding the low rental charge, and assesses and records these charges apart from charges for the gas itself. ETOC also emphasizes that a sales tax is collected on the cylinder rentals from the ultimate consumer of the gas. Finally, ETOC argues that it did not "use" the cylinders and become liable to pay a use tax, merely by filling them with gas, because the resale of the cylinders does not constitute "use," and the sale constitutes a "resale" even if the seller does something to the cylinders, provided that he sells it "in the form or condition in which it was purchased," or as an attachment to or integral part of other tangible personal property.

■ We hold that the sale of the cylinders to ETOC is a "sale at retail," the receipts of which are subject to the art. 20.02 sales tax unless exempted, notwithstanding that ETOC leases the cylinders after purchasing them. Although the subsequent lease may prevent this sale from constituting a retail sale in the ordinary sense of the term, "sale at retail" is statutorily defined to include "any sale of a taxable item," that is, any sale of personal property in "any manner perceptible to the senses." Art. 20.01(I)(1), (P), (W). The sale of cylinders to ETOC is clearly within this definition, and cannot be excluded by strict construction.

ETOC does not contend that the cylinders are not "returnable containers" within the meaning of art. 20.04(E)(3)(b) (§ 151.-322). They are, because they are "containers of a kind customarily returned by the buyer of the contents for reuse." Neither does ETOC contend that art. 20.04(E)(3) (§ 151.322) exempts its purchase of the cylinders from the sales tax, and ETOC concedes that it does not. We agree. Article 20.04(E)(3)(a)(i) (§ 151.322(a)(2)) exempts only the receipts of sales of *nonreturnable* containers without the contents to persons who place the contents and sell the contents together with the container. Article 20.04(E)(3)(a)(iii) (§ 151.322(a)(3)) exempts only the receipts from the sales of returnable containers with the contents *in connection with a retail sale of the contents,* and receipts from resales of such containers for refilling.

We assume that the receipts of a sale of a returnable container may sometimes also be exempt from the sales tax as a "sale for resale" under art. 20.04(O) (§ 151.302). For example, if ETOC *sold* its cylinders filled with gas to buyers who in turn sold them to other buyers, the sale by ETOC might be exempt under art. 20.-04(E)(3)(a)(iii) (§ 151.322(a)(3)) as a sale of a returnable container in connection with a retail sale of the contents, given the broad definition of "retail sale" in art. 20.01(I)(1). The sale by ETOC might also be exempt under art. 20.04(O) (§ 151.302) as a sale for resale.

We may also assume that ETOC's purchase of the cylinders literally constitutes a "sale for resale, leasing, or renting" within the meaning of art. 20.04(O) (§ 151.302), and is within the literal definitions of "sale for resale" stated in art. 20.01(S)(1), (2) (§ 151.006).

■ Nevertheless, the legislative intent clearly manifested by art. 20.-

04(E)(3)(a)(iii) is that receipts from the sale of returnable containers to persons who place the contents in the container and sell the contents together with the container are subject to and not exempt from the sales tax. The manifest intent of the statute is that the sales tax be imposed at some time on the sale of each container, either on the sale of the container to the person who sells goods in the container, or on the sale of the goods and container to the consumer. If the container is *nonreturnable,* the seller of the goods does not pay a tax on his purchase of containers for the goods, and the consumer of the goods pays the tax on the container. This is merely a specific application of the "sale for resale" exemption, which operates to impose the sales tax only on the consumer. If the container is *returnable,* or if the sale of the goods to the consumer is exempt, the seller of the goods pays the tax on his purchase of the container and the consumer of the goods does not; and neither is any tax paid when the container is resold for refilling. This is an exception to the general "sale for resale" exemption and the rule that the consumer pays the sales tax. It is obviously designed to avoid imposition of multiple taxes on the value of returnable containers each time they are transferred from the seller of the goods contained therein to a buyer or back to the seller. This would constitute an unfair and discriminatory burden on sellers and consumers of goods which must be sold in returnable containers. Alternatively, this exception to the general rule is designed to insure that a sales tax is imposed at some time on the value of the returnable container. If the tax is not imposed on the seller's purchase of the container, no tax would ever be imposed on its value, because (1) the sale of the container with the goods to the consumer is clearly exempt under art. 20.-04(E)(a)(iii), and (2) every sale of the returnable container by the seller of the goods to the buyer, or from the buyer of the goods back to the seller, would be a "sale for resale" exempt from the tax. This would create an unfair discrimination *in favor* of sellers and consumers of goods sold in containers.

The seller of the goods cannot claim exemption from taxation on his purchase of the returnable container, even though this is a "sale for resale" under the literal statutory definition of that term. To implement the obvious statutory purposes, it is necessary first to infer from the express exemption for sales of returnable containers in connection with retail sales *of the goods,* that the initial purchase of the containers by the seller of the goods is not exempt. This inference must also be made in order to give meaning and effect to the provisions of art. 20.04(E)(3) (§ 155.322) exempting the sales for empty, nonreturnable containers to one who sells goods in the containers, and the resale of returnable containers for refilling. Unless such an inference is made, these provisions are meaningless because these sales are *already* exempt as "sales for resales." *Eddins-Walcher Butane Co. v. Calvert,* 156 Tex. 587, 298 S.W.2d 93, 96 (1957). This provision for imposition of the sales tax on the seller of the goods, while implied and not expressed, is nevertheless required by provisions *specifically* dealing with containers and must prevail over and constitute an *exception* to the general rule that "sales for resale" are exempt from the sales tax. *Sam Bassett Lumber Co. v. City of Houston,* 145 Tex. 492, 198 S.W.2d 879, 881 (1947). This construction is in accordance with the letter and the rationale of the rule that "tax exemptions are subject to strict construction since they are the antithesis of equality and uniformity." *Hilltop Village, Inc. v. Kerrville Ind. Sch. Dist.,* 426 S.W.2d 943, 948 (Tex.1968). We have already shown the inequality and lack of uniformity which would be produced by a contrary construction. The construction adopted by this Court is also in accordance with long-standing rulings by the Comptroller, which are entitled to great weight. *Calvert v. Kadane,* 427 S.W.2d 605, 608 (Tex.1968). Our holdings are in accord with the decisions of courts which have addressed similar questions of statutory construction. *Pepsi-Cola Bottling Co. v.*

*Peters*, 189 Neb. 271, 202 N.W.2d 582 (1972); *Red Fox Gingerale Co. v. Langton*, 100 R.I. 531, 217 A.2d 466 (1966). *See also American Transfer & Storage Co. v. Bullock*, 525 S.W.2d 918, 925 (Tex.Civ.App. 1975, writ ref'd).

▮ ETOC contends, however, that its purchase of the cylinders is exempt as a "sale for resale" because ETOC *leases* the cylinders. The use of the leasing arrangement does avoid some of the problems discussed above underlying the exemption of the consumer's *purchase* of the returnable container with the goods contained therein and the non-exemption of the seller's initial purchase of the returnable container. For example, with the leasing arrangement, the lease of the cylinder by the buyer is not exempt as a "sale for resale," because the buyer never sells the cylinder back to ETOC. However, the buyer's lease of the cylinders is still exempt under art. 20.-04(E)(3)(a)(iii), because the lease would constitute a "sale" of the returnable container within the meaning of that section. Therefore, despite the leasing arrangement, no tax may be collected on the value of the cylinders unless it is imposed on the sale of the cylinders to ETOC. Also, since a seller of goods cannot avoid paying sales tax on his purchase of returnable containers for the goods if he *sells* the containers to the consumer, he should not be allowed to do so merely by conducting the same transaction in the form of a lease. This would provide such sellers an easy means of evading the tax on their purchases of returnable containers. In *Davis-Kemp Tool Co. v. Bullock*, 584 S.W.2d 579 (Tex.Civ.App. 1979) writ ref'd n.r.e., 590 S.W.2d 708 (Tex. 1979), the Supreme Court agreed that where a lessee of tools used these tools in providing services to its customers, its lease of the tools was not an exempt "sale for resale," even though the lessee purported in turn to *rent* the tools to its customers, and charged them rent separately from the charge for the services. 584 S.W.2d at 579–80. The court of civil appeals held that "the arrangement between plaintiff and its customers was not a lease; plaintiff was simply providing a service to its customers and, incidentally, used equipment which it had leased from the owners of the tools." Similarly, in our case, we should not allow ETOC's choice of the form of its arrangement with its customers regarding the cylinders to affect ETOC's tax liability. We hold that ETOC's purchase of the cylinders was subject to the art. 20.02 sales tax, and not exempt as a "sale for resale."

ETOC vigorously argues the case of *Schlusselberg v. Calvert*, 443 S.W.2d 695 (Tex.1969), in support of its contentions. *Schlusselberg* does not control. In that case, a wholesaler sold goods to another for resale in Mexico. The Comptroller contended that this "sale for resale" should be taxed because other exemptions *specifically* applied to sales for resale outside the State, and should be deemed to state the *only* exemptions applicable to such transactions, and because the transaction in question did not come within their terms, they should not be held exempt under the general "sale for resale" exemption. The court did not agree that the other exemptions were the only exemptions applicable to such transactions. In fact, the court held the various exemptions "are clearly designed to deal with entirely different situations," and *therefore* held that the "sale for resale" exemption could not be limited to exclude the transaction in question. The court did *not* hold that no specific exemption could limit the scope of the "sale for resale" exemption. Unlike *Schlusselberg*, in this case the sale of containers *is* clearly and specifically governed by art. 20.-04(E)(3)(a). The clear implication of its stated provisions is that the purchase of returnable containers by a seller for the delivery of goods therein to consumers of the goods, is subject to the sales tax. In *Schlusselberg*, the other exemptions did not clearly imply that the transaction was taxable notwithstanding the "sale for resale" exemption. This is sufficient to justify our holding limiting the literal scope of the "sales for resale" exemption. It is also important to note that at the time of the transactions involved in *Schlusselberg*, "sales at retail" subject to the sales tax

were more narrowly defined than they are under the definition applicable to this case, *excluding* "sales for resale," and that the definition of "sale for resale" was subsequently amended to exclude sales for resale outside the country. 1969 Tex.Gen. Laws, 2nd Called Sess., ch. 1, § 11, at 66.

█ Because the receipts of the sale of the cylinders to ETOC are subject to the art. 20.02 sales tax, ETOC was required to pay to its suppliers the sales tax in addition to and as part of the sales price. Art. 20.021(A) (§ 151.052). ETOC gave its suppliers "resale certificates." Under art. 20.-021(I) (§ 151.154), if a purchaser who, after giving a resale certificate to the seller, makes *any* use of the property other than retention while holding it for sale, the use is taxable to the purchaser, with the tax being applied to the sales price. We will assume that even though ETOC should have paid the sales tax on the cylinders to its suppliers, under this section, after giving a resale certificate, ETOC is liable only for the *use* tax if it *used* the cylinders. We hold that ETOC used the cylinders by filling the cylinders with gas, and as a means of delivering gas to buyers. This holding is in accord with the evident intent of the legislature that the seller of goods pay a tax on the price of returnable containers purchased by it to contain goods to be sold to buyers, with the broad definition of "use" in art. 20.01(R) (§ 151.011), and with decisions of courts which have considered the question. *District of Columbia v. Seven-Up Washington,* 214 F.2d 197 (D.C.Cir. 1954), cert. den. 347 U.S. 989, 74 S.Ct. 851, 98 L.Ed. 1123 (1954); *Arkansas Beverage Co. v. Heath,* 257 Ark. 991, 521 S.W.2d 835, 839–40 (1975); *Pepsi-Cola, supra; Red Fox Gingerale, supra; Consumers Cooperative Association v. State Comm. of Revenue and Taxation,* 174 Kan. 461, 256 P.2d 850, 855 (1953); *Gay v. Canada Dry Bottling Co. of Florida,* 59 So.2d 788, 790 (Fla.1952).

ETOC's points of error are overruled and the judgment is affirmed.