**Motion for Rehearing Denied; Opinion of February 12, 2026 Withdrawn. Affirmed and Memorandum Opinion filed March 12, 2026.**



In The

# Fifteenth Court of Appeals

---

## NO. 15-24-00111-CV

---

**KELLY HANCOCK, ACTING COMPTROLLER OF PUBLIC ACCOUNTS OF THE STATE OF TEXAS AND KEN PAXTON, ATTORNEY GENERAL OF THE STATE OF TEXAS, Appellants**

**V.**

**CHAMPIONX, LLC, Appellee**

---

**On Appeal from the 419th District Court**
**Travis County, Texas**
**Trial Court Cause No. D-1-GN-20-000139**

---

## MEMORANDUM OPINION

We withdraw our prior opinion and judgment dated February 12, 2026, and substitute the following in its place.

The question in this tax-refund case is whether a company that manufactures and sells chemicals for the energy and water industries proved that its purchases of

porta-feed containers for those chemicals and associated services were exempt from sales taxes under a statutory exemption.

We conclude that the trial court correctly concluded that the property and services at issue are exempt from sales taxes and affirm the judgment of the trial court.

## BACKGROUND

**I.     Factual Background[1]**

ChampionX is a manufacturer of chemicals, including hazardous chemicals, for sale to customers in a wide range of industries. Between March 2011 and October 2018 (the Periods at Issue), ChampionX manufactured chemicals for use in water treatment applications and for customers in the oil and gas industries who were involved in oil exploration, production, refining, and in chemical processing.

During the Periods at Issue, ChampionX placed the chemicals it manufactured and sold in returnable porta-feed containers (Containers). ChampionX designed the Containers to hold the chemicals it manufactured and purchased the Containers from third parties ChampionX used three types of returnable, reusable Containers: stainless steel, polyethylene-lined, and plastic bottle inside a stainless steel shell. The Containers varied in size from 30 gallons to 700 gallons and ensured the chemicals did not react while being transported, preserved the chemical composition of the product, and met governmental regulations and standards.

ChampionX's chemical manufacturing process consists of charging raw materials in bulk tanks, blending, and adding a catalyst. ChampionX first tests the product to make sure it meets customer and industry specifications and then cools the product and transfers it from the reactor into a selected Container at the plant.

---

[1] The facts are taken primarily from the parties' Joint Stipulation of Facts.

2

The Containers are then transferred to a warehouse to be stored until they are ready to be transported to customers.

When a customer finishes with a Container, the customer contacts a ChampionX representative to arrange Container retrieval. A third party vendor picks up the Containers and transports them to a third-party cleaning service that is contracted to recondition and clean the returned Containers. The cleaning service provider cleans and inspects the Containers and certifies them to ensure compliance with Department of Transportation regulations. The cleaned and repaired Containers are transferred back to ChampionX and put back into the manufacturing process.

ChampionX paid sales tax and accrued use tax on the Containers at the time it purchased or leased the Containers from its vendors and paid sales tax or accrued use tax on the purchase of cleaning services related to the Containers. ChampionX also paid sales or use tax on services for the delivery and pickup of the Containers to and from customers. Later, ChampionX filed sales and use tax refund claims for the Periods at Issue in which it alleged it was owed a refund related to the purchase or lease of the Containers and the purchase of cleaning, delivery, and pickup services. The parties stipulated to the amounts of refunds sought.

## II.   Administrative Proceedings

The Comptroller of Public Accounts[2] issued final audit reports disallowing ChampionX's refund claims. ChampionX requested a refund hearing. The Hearings Section issued position letters recommending denial of ChampionX's refund claims. ChampionX replied and the Hearings Section filed notices of hearing by written

---

[2] Glenn Hegar, who in his official capacity as Comptroller of Public Accounts of the State of Texas, was previously a named defendant in this case, was succeeded by Kelly Hancock, Acting Comptroller of Public Accounts. In accordance with Rule 7.2(a) of the Texas Rules of Appellate Procedure, Acting Comptroller Hancock has been automatically substituted in Comptroller Hegar's place in this appeal.

submission with the State Office of Administrative Hearings (SOAH). SOAH recommended denying ChampionX's refund claims, and the Comptroller adopted SOAH's recommendations. ChampionX timely filed motions for rehearing under Section 111.105 of the Tax Code, which were denied.

## III. Trial Court Proceedings

Ultimately, ChampionX filed petitions for judicial review in Travis County District Court asserting refund claims for the Periods at Issue. ChampionX filed a motion for partial summary judgment in which it asserted that there were no genuine issues of material fact precluding judgment as a matter of law. ChampionX asserted the evidence established as a matter of law that the Containers sold and leased during the Periods at Issue were exempt from sales and use tax under Section 151.318 of the Tax Code, and the cleaning, delivery, and pickup services purchased in connection with the Containers were exempt under Section 151.3111 of the Tax Code. ChampionX argued that the evidence demonstrated that ChampionX used the Containers "in[/during] the actual manufacturing, processing or fabrication of tangible personal property for ultimate sale" pursuant to Sections 151.318(a)(5), (8), and (10).

ChampionX attached to its motion for partial summary judgment the joint stipulation of facts; an affidavit from Scott Schawalder, director of process technology for ChampionX; photographs of sample Containers; recertification guidelines for the reusable Containers; the affidavit of Gerald Malak, manager of the porta-feed packaging systems in Naperville, Illinois; brochures describing the Containers; the affidavit of Daniel McKernan, delivery systems fleet safety manager for Nalco Water, a delivery service provider; and copies of permits from the U.S. Department of Transportation.

The Comptroller and the Attorney General (collectively the State) filed a

traditional and no-evidence motion for summary judgment and partial plea to the jurisdiction. The State asserted that it was entitled to judgment as a matter of law because ChampionX's Containers did not qualify for the manufacturing exemption (Tax Code Section 151.318), were taxable under the specific statute for containers (Tax Code Section 151.322), and services on the Containers were not exempt. As summary judgment evidence, the State attached the parties' joint stipulation of evidence. The State asserted that the Containers were neither ingredients nor component parts of the property manufactured for ultimate sale and thus were not exempt under Section 151.318(a)(1) of the Tax Code. The State further asserted the Containers were excluded from the manufacturing exemption under Section 151.318(c) because they were used to distribute, transport, maintain, and store chemicals. The State maintained that the Containers were taxable under Section 151.322 of the Tax Code, a specific exemption for containers.

The trial court denied the State's motion for summary judgment, granted ChampionX's motion, and granted the State's partial plea to the jurisdiction.[3] ChampionX moved for entry of final judgment based on the agreed upon refund amounts. The trial court entered final judgment in favor of ChampionX finding that (1) the exemption for property used in manufacturing under Section 151.318 of the Tax Code exempts the Containers at issue from Texas sales and use tax and (2) the exemption for services on exempted property under Section 151.3111 applies to the cleaning, delivery, and/or pickup services performed on the Containers. This appeal followed.

---

[3] No party has challenged the trial court's finding that it lacked jurisdiction over certain constitutional claims asserted by ChampionX.

ANALYSIS

## I.     Relevant Tax Code Provisions

Texas imposes a sales tax on each sale of a taxable item in this state. Tex. Tax Code § 151.051. The term "taxable item" includes tangible personal property and taxable services. *Id*. § 151.010. Texas imposes a use tax on the storage, use, or other consumption of a taxable item purchased from a retailer for storage, use, or other consumption in Texas. *Id*. § 151.101(a).

Two exemptions are at issue in this case: the Manufacturing Exemption and the Container Exemption. The Manufacturing Exemption is found in Section 151.318 of the Tax Code and exempts several categories of tangible personal property from taxation under Chapter 151. As applicable here, the Manufacturing Exemption exempts tangible personal property that is sold, leased, stored, used, or consumed by a manufacturer if the tangible personal property is:

- used or consumed in the actual manufacturing, processing, or fabrication of tangible personal property for ultimate sale if the use or consumption of the property is necessary and essential to a pollution control process, *see* Tex. Tax Code § 151.318(a)(5);

- used or consumed during the actual manufacturing, processing, or fabrication of tangible personal property for ultimate sale if the use or consumption of the property is necessary and essential to a quality control process that tests tangible personal property that is being manufactured, processed, or fabricated for ultimate sale, *id.* § 151.318(a)(8); or

- used or consumed in the actual manufacturing, processing, or fabrication of tangible personal property for ultimate sale if the use or consumption of the property is necessary and essential to comply with federal, state, or local laws or rules that establish requirements related to public health, *id.* § 151.318(a)(10).

By contrast, the Container Exemption exempts the following from taxation

imposed by Tax Code Chapter 151:

> (1) a container sold with its contents if the sales price of the contents is not taxed;
>
> (2) a nonreturnable container sold without contents to a person who fills the container and sells the contents and the container together; and
>
> (3) a returnable container sold with its contents or resold for refilling.

*Id.* § 151.322(a).

The Tax Code further provides that subject to Section 151.1551, a "service that is performed on tangible personal property that, if sold, leased, or rented, at the time of the performance of the service, would be exempted under this chapter because of the nature of the property, its use, or a combination of its nature and use" is exempt from taxation under Chapter 151. *Id.* § 151.3111(a).

## II.    Issues Presented

In three issues, the State asserts (1) the Container Exemption in Tax Code Section 151.322 bars ChampionX from claiming a sales and use tax refund for its purchase of the Containers, and the trial court's holding to the contrary is legally erroneous; (2) ChampionX's purchases do not qualify for a sales and use tax exemption; and (3) ChampionX's purchases of cleaning, delivery, and pickup services performed on their Containers are not exempt from sales and use taxes.

## III.   Standard of Review

The State presents issues involving review of a trial court's summary judgment and statutory construction. We review the trial court's grant of summary judgment de novo. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013). To prevail on a traditional motion for summary judgment, a movant has the burden of proving that it is entitled to judgment as a matter of law and that there is no genuine issue of material fact. Tex. R. Civ. P. 166a(c); *Cathey v. Booth*, 900

S.W.2d 339, 341 (Tex. 1995) (per curiam). When opposing parties file cross motions for summary judgment, each party must establish that it is entitled to judgment as a matter of law. *Tarr v. Timberwood Park Owners Ass'n*, 556 S.W.3d 274, 278 (Tex. 2018). When the trial court grants one motion and denies the other, as the trial court did here, we review all questions presented and render the judgment the trial court should have rendered. *Id.*

We review questions of statutory construction de novo, seeking to ascertain and effectuate the Legislature's intent as expressed by the statute's language, considering the context and framework of the statute as a whole. *City of Conroe v. San Jacinto River Auth.*, 602 S.W.3d 444, 451 (Tex. 2020). If the meaning of the statutory language is unambiguous, we adopt the interpretation supported by the plain meaning of the provision's words. *St. Luke's Episcopal Hosp. v. Agbor*, 952 S.W.2d 503, 505 (Tex. 1997). We must not engage in forced or strained construction; instead, we must yield to the plain sense of the words the legislature chose. *See id.* (citing *Simmons v. Arnim*, 220 S.W. 66, 70 (Tex. 1970)). "[T]ax exemptions must be construed strictly because 'they are the antithesis of equality and uniformity and because they place a greater burden on other taxpaying businesses and individuals.'" *Sunstate Equip. Co. v. Hegar*, 601 S.W.3d 685, 690 (Tex. 2020) (quoting *Bullock v. Nat'l Bancshares Corp.*, 584 S.W.2d 268, 272 (Tex. 1979)).

When a taxpayer requests a refund, the taxpayer bears the burden of establishing that the taxes at issue were erroneously collected or paid. *See, e.g.*, 34 Tex. Admin. Code § 1.26(e). If an amount of tax, penalty, or interest has been unlawfully or erroneously collected, the Comptroller shall credit or refund the amount. *See* Tex. Tax Code § 111.104(a). Although the Administrative Code states that the taxpayer must prove an exemption by clear and convincing evidence, 34 Tex. Admin. Code § 1.26(c), in suits for a tax refund in district court, the taxpayer

is required to prove its entitlement to an exemption by a preponderance of the evidence. *GEO Grp., Inc. v. Hegar*, 709 S.W.3d 585, 589 (Tex. 2025); Tex. Tax Code § 112.154 (providing that in district court suits for tax refunds, "the issues shall be tried de novo as are other civil cases").

## IV. The Container Exemption Does Not Control Over the Manufacturing Exemption.

In its first appellate issue, the State argues that the trial court's judgment must be reversed because ChampionX does not qualify for an exemption under the Container Exemption, and that the Container Exemption (Section 151.322) controls over the more general Manufacturing Exemption (Section 151.318) and so prevents ChampionX from obtaining an exemption under the latter. The trial court implicitly rejected this argument in the course of granting ChampionX's summary judgment motion and denying the State's motion for summary judgment. The questions of whether the provisions are irreconcilable and, if so, whether the Container Exemption controls over the Manufacturing Exemption are questions of first impression for our court.

ChampionX responds to the State's argument by asserting that a more specific statute controls over a more general statute only when the two provisions share the same purpose and they irreconcilably conflict. And here, ChampionX claims, the exemption provisions do not share the same purpose nor do they irreconcilably conflict. For the reasons stated below, we agree with ChampionX that the provisions are not irreconcilable and both can be given effect.

Quoting *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 901 (Tex. 2000), the State asserts that "the traditional statutory construction principle [is] that the more specific statute controls over the more general." And here, the State claims, the trial court erred in applying the Manufacturing Exemption because the more

specific Container Exemption controls. Assuming *arguendo* that the Container Exemption is the more specific statute, we are mindful that the "specific-over-general canon[4] applies only when two statutory provisions are irreconcilable." *TracFone Wireless, Inc. v. Comm'n on State Emergency Commc'ns*, 397 S.W.3d 173, 181 (Tex. 2013) (citing Tex. Gov't Code § 311.026(a)). Accordingly, we first consider whether the statutes are irreconcilable, keeping in mind that the Texas Code Construction Act requires us to construe the provisions to give effect to both if it is possible to do so. Tex. Gov't Code § 311.026(a); *see In re Mem'l Hermann Hosp. Sys.*, 464 S.W.3d 686, 716 (Tex. 2015) (orig. proceeding) ("To the extent possible, we will construe the different provisions in a way that harmonizes rather than conflicts."). Statutes are irreconcilable if they cannot "concurrently operate." *Mem'l Hermann,* 464 S.W.3d at 716. In other words, the question is whether the "literal terms of the two provisions cannot both be true." *Id.*; *cf. TracFone Wireless*, 397 S.W.3d at 181 (Tex. 2013) (explaining that in *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 901 (Tex. 2000), two statutes were irreconcilable where one statute required a court to award prejudgment interest in wrongful-death suits and another statute expressly prohibited prejudgment interest in certain healthcare liability wrongful-death suits).

We begin this inquiry by looking "first and foremost to the words of the statute." *Lexington Ins. Co. v. Strayhorn*, 209 S.W.3d 83, 85 (Tex. 2006). Nothing in the Tax Code suggests that if property does not qualify for a Container Exemption,

---

[4] The "specific over the general" is not an absolute rule, even when statutes are irreconcilable. The Texas Code Construction Act states that "[i]f the conflict between the general provision and the special or local provision is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general provision is the later enactment and the manifest intent is that the general provision prevail." Tex. Gov't Code § 311.026(b).

then it cannot be considered for a Manufacturing Exemption. *See* Tex. Tax Code § 151.301. The Manufacturing Exemption specifically excludes certain property such as hand tools and intraplant transportation equipment. Tex. Tax Code § 151.318(c). The Legislature could have excluded containers from the Manufacturing Exemption, but it did not do so. *Cf. Bexar Appraisal Dist. v. Johnson*, 691 S.W.3d 844, 856 (Tex. 2024) (explaining that the Legislature knows how to restrict a property tax exemption and rejecting a claim that it did so where it did not include such a limitation in the statute). And although we are to construe tax exemptions narrowly, we cannot read a restriction into the code which is not provided for by the Legislature. *Id.* at 855 (recognizing that strict construction "does not mean disregarding the words used by the Legislature" (quoting *Odyssey 2020 Acad., Inc. v. Galveston Cent. Appraisal Dist.*, 624 S.W.3d 535, 541 (Tex. 2021))).

We next examine whether the statutes share the same purpose and irreconcilably conflict. *Lexington Ins.*, 209 S.W.3d at 87. Originally enacted in 1961 and amended several times subsequently, the Manufacturing Exemption is designed "(1) to encourage economic development in this state; (2) to avoid pyramiding the sales tax on successive buyers and sellers, which would result in the ultimate consumer paying sales tax on sales tax; and (3) to strike a balance between the policy of avoiding multiple taxation and the need to raise revenue for the state." *Sharp v. Tyler Pipe Indus., Inc.*, 919 S.W.2d 157, 161 (Tex. App.—Austin 1996, writ denied); *Silicon Labs., Inc. v. Hegar*, No. 03-17-00061-CV, 2018 WL 3405459, at *1 (Tex. App.—Austin July 13, 2018, pet. denied).

Similarly, the Third Court of Appeals has concluded that the purpose of the Container Exemption is to "avoid imposition of multiple taxes on the value of returnable containers each time they are transferred from the seller of the goods contained therein to a buyer or back to the seller." *E. Tex. Oxygen Co. v. State*, 681 S.W.2d 741, 745 (Tex. App.—Austin 1984, no writ). While both statutes have a

11

common purpose of avoiding double taxation, the Manufacturing Exemption is additionally designed to encourage economic development.

Although the statutes share one purpose in common, we find that both can be given effect. In *Lexington Insurance Company*, the Texas Supreme Court concluded that overlapping tax provisions could be reconciled where one could be applied when two conditions were met and the other applied when one or both of those conditions were not met. *Lexington Ins.,* 209 S.W.3d at 87. Similarly here, the Container Exemption and Manufacturing Exemption can be reconciled. An exemption under the Container Exemption applies when conditions of that section are met, but if those conditions are not met, the Manufacturing Exemption could apply. A similar distinction exists here. Notably, the Manufacturing Exemption explicitly governs property used in manufacturing. Tex. Tax Code § 151.318. The Tax Code defines "manufacturing" to include "each operation beginning with the first stage in the production of tangible personal property and ending with the completion of tangible personal property having the physical properties (including packaging, if any) that it has when transferred by the manufacturer to another." Tex. Tax Code § 151.318(d); *Sabine Mining Co. v. Strayhorn*, No. 13-06-330-CV, 2007 WL 2390686, at *5 (Tex. App.—Corpus Christi–Edinburg Aug. 23, 2007, no pet.). On the other hand, the Container Exemption governs certain containers and does not mention manufacturing, and so could apply more broadly to non-manufacturing scenarios.[5] Tex. Tax Code § 151.322.

The State relies on *East Texas Oxygen Company v. State* in support of its argument that the Container Exemption applies to ChampionX's returnable and

---

[5] This is not a meaningless distinction. Not every activity that culminates in the sale of goods falls under the umbrella of "manufacturing." For example, "the extraction of oil and gas from the ground would not seem to qualify as manufacturing." *Sw. Royalties, Inc. v. Comb*s, 501 S.W.3d 95, 101 (Tex. App.—Austin 2014, pet. granted), aff'd sub nom. *Sw. Royalties, Inc. v. Hegar*, 500 S.W.3d 400 (Tex. 2016).

reusable containers. 681 S.W.2d 741 (Tex. App.—Austin 1984, no writ). In that case, the Third Court of Appeals construed the predecessor to the Container Exemption and the sale for resale exemption and concluded that the Container Exemption prevailed over the sale for resale exemption.[6] *Id.* at 744–46. East Texas Oxygen Company (ETOC) purchased empty returnable cylinders to fill with gas that was sold to buyers. *Id.* at 742. ETOC claimed a tax exemption under the sale for resale exemption, but the court concluded that even assuming ETOC's purchase of the cylinders constituted a sale for resale, the provisions specifically dealing with the sale of containers controlled. *Id*. at 742, 744–45. The court explained that it was "necessary first to infer from the express exemption for sales of returnable containers in connection with retail sales *of the goods*, that the initial purchase of the containers by the seller of the goods is not exempt." *Id.* at 745. The court reasoned that unless such an inference was made, the "provisions are meaningless because these sales are *already* exempt as 'sales for resales.'" *Id*. at 745.

We are not bound by the Third Court's holding in *East Texas Oxygen* and do not find it applicable in this case. ETOC did not seek a Manufacturing Exemption so the Third Court did not address whether the Manufacturing Exemption could be reconciled with the Container Exemption. And as explained above, we have concluded that the Container Exemption and Manufacturing Exemption can be reconciled. We overrule the State's first issue.

## V. The State Has Waived Its Challenge to the Trial Court's Grant of ChampionX's Motion for Summary Judgment Exempting the Containers from Sales Tax Under the Manufacturing Exemption.

In its second appellate issue, the State argues that if the Container Exemption

---

[6] The sales or use taxes at issue in *East Texas Oxygen* occurred between 1970 and 1974 before codification of the Texas General Tax Statutes into the Tax Code. The court cited the corresponding sections of the Tax Code in its analysis including the Container Exemption found in Section 151.322 of the Tax Code. *See E. Tex. Oxygen*, 681 S.W.2d at 742 n.1, 744.

13

does not bar ChampionX from claiming the Manufacturing Exemption, ChampionX's purchases nevertheless do not qualify for a sales and use tax exemption under the Manufacturing Exemption. In the trial court, ChampionX moved for summary judgment on the grounds that Containers were exempt from sales and use tax pursuant to the Manufacturing Exemption in Texas Tax Code section 151.318, subsections (a)(5) (pollution control), (a)(8) (quality control), and (a)(10) (required to comply with federal, state, or local laws related to public health). The trial court granted ChampionX's motion without specifying which subsection applies and later issued a final judgment stating that "[t]he exemption for property used in manufacturing under Tex. Tax Code § 151.318 exempts [the Containers] at issue from Texas sales and use tax." In this Court, the State asserts that "[t]he trial court erred in holding that the exemption for property used in manufacturing under Texas Tax Code Section 151.318 exempts Champion's Containers from Texas sales and use tax." But the State's opening brief does not address subsections (a)(5), (a)(8), and (a)(10)—which are the only subsections under which ChampionX claimed an exemption. Instead, the State's opening brief argues only that the Containers are not exempt under subsection (a)(1), a subsection that ChampionX never invoked.

When a trial court does not specify the basis for its summary judgment, the nonmovant must show on appeal that the trial court erred by basing the summary judgment on every ground asserted in the motion. *Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995); *Collins v. D.R. Horton-Tex. Ltd.*, 574 S.W.3d 39, 44 (Tex. App.—Houston [14th Dist.] 2018, pet. denied). "If summary judgment may have been rendered, properly or improperly, on a ground not challenged, the judgment must be affirmed." *Collins*, 574 S.W.3d at 44.

ChampionX further argues that the State "wholly omit[s] any reference" to the exemptions actually sought by ChampionX. In its reply brief, the State counters

14

that it did not waive those issues because it asserted in its opening brief that the Containers did not qualify for any Manufacturing Exemption. But the State only addressed the exemption under subsection (a)(1), failing to mention any other subsection. We may not reverse a summary judgment where each independent ground on which the trial court may have based its judgment has not been challenged. *Rosetta Res. Operating, LP v. Martin*, 645 S.W.3d 212, 228 (Tex. 2022); *see Jarvis v. Rocanville Corp.*, 298 S.W.3d 305, 313 n.8 (Tex. App.—Dallas 2009, pet. denied) ("[I]f an appellant asserts a general issue that the trial court erred in granting summary judgment, that appellant must also provide appropriate arguments within that issue negating all possible grounds upon which summary judgment could have been granted.").

While the State asserted for the first time in its reply brief that ChampionX's containers do not qualify for a tax exemption under subsections (a)(5), (a)(8), and (a)(10), the rules of appellate procedure do not allow an appellant to raise a new issue in a reply brief. Tex. R. App. P. 38.3. This includes challenges to specific summary judgment grounds. *See, e.g.*, *Collins*, 574 S.W.3d at 44; *Miner Dederick Const., LLP v. Gulf Chem. & Metallurgical Corp.*, 403 S.W.3d 451, 463 n.3 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). We decline to consider the State's arguments raised for the first time in a reply brief. Accordingly, we affirm the trial court's grant of summary judgment finding an exemption under Texas Tax Code section 151.318. We overrule the State's second issue with respect to any challenge to the applicability of subsections (a)(5), (a)(8), and (a)(10).

## VI. The Containers Are Not Excluded From the Manufacturing Exemption.

As part of its second appellate issue, the State argues that the Containers do not qualify for the Manufacturing Exemption because they are excluded pursuant to Texas Tax Code Section 151.318(c). These subparts of the Manufacturing

Exemption statute specifically exclude from the exemption equipment used in certain activities, including "equipment or supplies used in sales or distribution activities, research or development of new products, or transportation activities," Tex. Tax Code § 151.318(c)(3), and "machinery and equipment or supplies to the extent not otherwise exempted under this section used to maintain or store tangible personal property." *Id.* § 151.318(c)(4). The State claims that both these exclusions apply. "A taxpayer claiming an exemption under [section 151.318] has the burden of proof that the exemption is applicable and that no exclusion under Subsection (c) applies." *Id.* § 151.318(r). ChampionX's position is that neither exclusion applies as a matter of law.

Here, the State claims that the Containers are used in "transportation activities." The State compares the Containers to a "tanker truck delivering gasoline," but does not explain how the Containers—which cannot be transported without additional equipment—are delivering the chemicals. The State also claims that the Containers are utilized for the purpose of transporting the chemicals to end-user customers. But the transportation exclusion does not apply to materials that are essential to the manufacturing process and are "not merely related to transportation activities." *State v. B. F. Goodrich Co.*, 617 S.W.2d 835, 838 (Tex. Civ. App.—Eastland 1981, writ ref'd n.r.e.) (holding the predecessor to Tex. Tax Code § 151.318(c)(3) did not apply to wrapping and packaging materials where the evidence established they were necessary and essential to the manufacturing process); *see* Tex. Comptroller of Pub. Accounts, Hearing No. 24,833, STAR System No. 9004H0999A01 (Apr. 10, 1990) (considering the Manufacturing Exemption and explaining that the Legislature used equipment used in "transportation activities" as an example of property used by manufacturers but "not used in an actual manufacturing, processing or fabrication operation"). And as

16

explained above, the State failed to challenge the trial court's conclusion that the Containers were exempt under section 151.318 such that they were used or consumed during manufacturing and were necessary and essential to part of that process.

Alternatively, the State argues that the Containers are excluded from the Manufacturing Exemption because they are equipment used to maintain or store tangible personal property. *See* Tex. Tax Code §151.318(c)(4). But this exclusion does not apply to property "otherwise exempted" by the Manufacturing Exemption. *Id.*; *see* 34 Tex. Admin. Code § 3.314(b)(1) ("Sales or use tax is not due on containers or packaging supplies purchased by manufacturers for use as a part of the completion of the manufacturing process."). Because the State has not challenged each summary judgment ground supporting the trial court's conclusion that the Containers were otherwise exempted under subsections (a)(5), (a)(8), and (a)(10), the State has failed to demonstrate that the trial court erred in granting summary judgment on the ground that the exclusion does not apply. We overrule the State's second issue.

## VI. The Trial Court Properly Ordered a Refund of Taxes Paid on Services Performed on the Containers.

In the State's third issue, the State argues that the exemption for services on exempted property applies to the cleaning, delivery, and pickup services performed on the Containers. A service that is performed on tangible personal property that would be exempted from sales and use taxes because of the nature of the property, its use, or combination of its nature and use at the time of performance of the service, is also exempt from sales and use taxes. Tex. Tax Code § 151.3111.

In the Joint Stipulation of Facts, the parties agreed that when a customer is finished with a Container, a third-party vendor picks up the Container, transports it

to a cleaning service where it is cleaned and inspected and then transferred back to ChampionX. Returned Containers are inserted back into the manufacturing process. The State argues that, even assuming that the Containers are tax exempt under the Manufacturing Exemption,[7] the cleaning and services were performed after the Containers had been emptied and the manufacturing process was complete so they were no longer exempt "at the time" services on those Containers were performed.

We disagree with the State's contention that the Containers lost their tax exempt status the moment they were emptied before being reinserted into the manufacturing process. Nothing in the Manufacturing Exemption indicates that property used in manufacturing loses and regains its tax exempt status depending on whether it is being used or consumed in manufacturing at a particular moment.

Further, Tax Code section 151.3111 provides that

> a service that is performed on tangible personal property *that, if sold, leased, or rented, at the time of the performance of the service, would be exempted* under this chapter because of the nature of the property, its use, or a combination of its nature and use, is exempted from this chapter.

Tex. Tax Code § 151.3111(a) (emphasis added).

The Containers, even if empty at the time of service, would still be exempted under the Manufacturing Exemption if sold, leased, or rented to a manufacturer at that time. *See* Tex. Tax Code § 151.318 (exempting certain items from taxes if sold, leased, or rented to a manufacturer). We overrule the State's third issue and affirm the trial court's summary judgment on ChampionX's claim that the services

---

[7] The State also asserts that if we determine that the Containers are not tax exempt under the Manufacturing or Container Exemption, then the services performed on the Containers are also not tax exempt. We need not reach this question because we have affirmed the trial court's judgment on the ground that the Containers are exempt under the Manufacturing Exemption.

performed on the Containers are exempt from taxation.

## CONCLUSION

We affirm the trial court's judgment.

/s/ April Farris
April Farris
Justice

Before Chief Justice Brister and Justices Field and Farris.